## KENNEDY *v.* LITTLE.

(In Banc. May 12, 1941. Suggestion of Error Overruled June 14, 1941.)

[1 So. (2d) 163. No. 34539.]

**Gilbert & Cameron,** of Meridian, for appellant.

**Williamson & Riddell**, of Meridian, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The appellee was employed by the appellant to fire the boilers of the engines in his manufacturing plant, and this appeal is from a judgment for damages from a personal injury caused him, as the jury found, by negligence of the appellant's foreman.

The only assignments of error argued by counsel for the appellant are that the court below erred (1) in not granting his request for a directed verdict; and (2) in not setting the verdict aside on the ground that it is against the great weight of the evidence.

According to the appellee, he was injured while obeying an order of the appellant's foreman, which the foreman had the right to give. If given, negligence appears in this order, or rather the jury had the right to so find. The appellant says the order was given. The foreman denied giving it. No other person heard or was in position to hear the order, if given. The appellant's contention is that the appellee's testimony is unworthy of belief—that he is not a credible witness and therefore his testimony should not have been submitted to the jury. It would serve no good purpose to set forth the several reasons advanced by counsel for the appellant for not believing the appellee's testimony, one of which is that a conflict appears therein on an immaterial matter, for one of the most fundamental and elementary rules of judicial procedure is that the credibility of witnesses in a case tried to a jury is for its determination. If an examination of the many cases in this court so holding be desired, they will be found collated in the notes to 64 C. J., sec. 340, page 348 et seq., and in appropriate sections of the Mississippi Digest dealing with the subject of Trial, to here cite which would be supererogatory.

According to the stenographer's transcript and a special bill of exceptions: "On the trial of the above cause upon examination of two of the prospective jurors, Albert Phillips and J. S. Eggerton, counsel for the plaintiff asked these two jurors if they or either of them or any

of their close relatives or kin people were connected in any way with any liability insurance company, any insurance company writing liability insurance to which the defendant then and there objected and which was by the Court sustained. Whereupon the defendant moved the Court for a mistrial because of said question of the counsel which motion was, by the Court, overruled.'' This ruling of the court is assigned for error, but no argument relative thereto appears in the brief of either counsel. Consequently, the assignment was waived, Rayl v. Thurman, 156 Miss. 8, 125 So. 912; Mitchell v. Finley, 161 Miss. 527, 137 So. 330; however, the ruling was challanged at the conference of the judges and therefore will be here considered. The reason why counsel for the appellant did not argue it appears in Yazoo City v. Loggins, 145 Miss. 793, 110 So. 833; Lee County Gin Company v. Middlebrooks, 161. Miss. 422, 137 So. 108; Avery v. Collins, 171 Miss. 636, 157 So. 695, 158 So. 552; which put at rest, or should so do, the right of a litigant to propound in good faith similar questions to jurors on their voir dire examination ''in order that the right to challenge jurors peremptorily, or for cause, may be intelligently exercised.'' In those cases the court permitted the questions, while here they were not permitted, and the good faith of counsel in asking them is not challenged. The ruling in the Loggins, Middlebrooks and Collins cases, supra, is in accord with that in practically all of our sister states, as will appear from an examination of the note to Stehouwer v. Lewis, 74 A. L. R. at page 860.

Affirmed.

DISSENTING OPINION.

McGehee, J., delivered a dissenting opinion.

The plaintiff testified that during the early morning, when he sustained the injury complained of, he was called by the appellant's foreman, and requested to clean some ashes from around a tail-pipe in the combustion chamber of a boiler which he was employed to fire, in order that the

foreman might go back into this chamber and unchoke this pipe, which had become stopped up on the night before, resulting in this boiler being then shut down. The pipe was about three inches in diameter, and was located, as he says, about three and a half feet straight forward in front of the door opening into the combustion chamber. There was no other testimony which would indicate that it was more than five or six feet from the door.

The usual custom which had been followed in removing the ashes from the combustion chamber was to use a rake fashioned without prongs, like a hoe, with a handle at least seven feet in length, while standing outside on the ground, with which to assemble the ashes in a pile, a shovel then being used to remove them from the combustion chamber, and into a container on the outside, to be carted away. On the morning of the injury, and after the boiler had been shut down since the night before, the foreman had gone into the combustion chamber to examine the pipe. When he came out for the purpose of going to the office to obtain an electric light and cord, with a view to going back into the combustion chamber to remedy the pipe, the plaintiff says that he asked the foreman, "What's the matter, Mr. Jeff? say, 'It's too hot in there for you? He say, 'No,' say 'There's a lot of ashes in there got to come out.' He say, 'Go in there and get them out up to the tail pipe so I can see what's the matter with it.' "

In the meantime the plaintiff had, while standing on the outside, removed some of the ashes, which he says had been wet with a hose, but that some of them were still hot; that in compliance with the order of the foreman he went into the combustion chamber through the door, which was approximately eighteen by twenty inches in diameter, while the foreman was gone for the electric light and cord; and that thereupon the hot ashes fell down from both ways, and severely burned his hands, to such an extent that he had to call the assistant foreman

to pull him out of the combustion chamber through the furnace door, head foremost.

He first testified unequivocally that he carried with him into this combustion chamber the long-handled rake, notwithstanding that the proof in the case discloses that it would have been almost utterly impossible to use it within the space available in the combustion chamber; and although he was given an opportunity to change his statement, and to say that he took the shovel in there with him, he continued to insist that it was the rake. He was later recalled to the witness stand, when he testified positively and unequivocally that it was the shovel which he carried in with him.

The controlling opinion in this case proceeds on the theory that this was a contradiction upon an immaterial matter. The trouble with that theory is that neither the rake nor the shovel were found in the combustion chamber after he was pulled out through the door head foremost. He undertook to explain this discrepancy by saying that although he was badly burned, immediately upon getting into the combustion chamber, and while on his knees, he put the implement out of the chamber through the door, before he was pulled out. The testimony conclusively establishes the fact that his hands were so badly burned that this would have been a physical impossibility. In other words, he is left in the position of having been in the combustion chamber, without either of these implements, for the purpose of removing hot ashes. He testified that when he put his head through the door he knew it was hot on the inside, and that the bridge-wall at the back of the combustion chamber, five or six feet in front of him, was red hot. He is therefore in the attitude of having gone into the chamber to remove the ashes with his naked hands.

This conflict in his own testimony goes directly to the question of whether the foreman had ordered him to go into the chamber to remove the ashes, since he said that the order was for him to get the ashes out ''up to the

tail pipe.'' It is true that the proof discloses that all of the ashes could not have been removed from the combustion chamber while standing on the outside and using this rake and shovel, particularly those against the wall immediately to the right and left of the door. He did not contend that the order of the foreman was that he should remove all of the ashes from the entire chamber on that occasion.

The three other boiler firemen—there being both a day and night shift—each testified that the foreman had never, on any former occasion, required that a fireman go inside a combustion chamber for the purpose of removing the ashes, and that they knew of no occasion when this had been done. If the plaintiff had ever gone inside for that purpose on any previous occasion there is no testimony showing that the foreman knew of such practice.

The testimony of the foreman and the plaintiff having been in direct conflict as to whether the plaintiff had any reason to understand that the foreman meant for him actually to go inside the combustion chamber on that occasion, when he had a rake with a seven-foot handle with which to remove the ashes from around the three-inch tail pipe that extends up into the chamber, and which was only three and a half feet from the door, according to plaintiff's testimony, and not in excess of approximately five feet, according to any of the testimony in the case, the appellant was entitled to have the jury pass upon this conflict in the testimony, and determine which was the more reasonable without being influenced by the fact that a liability insurance company might have to pay the judgment, instead of the appellant. We find that on the voir dire examination of the jurors, as disclosed by a response to an objection made by appellant's counsel, the insurance question was injected into the case when the plaintiff's counsel stated, in the presence of the jurors, ''I asked the last two jurors, Mr. Phillips and Mr. Eggerton, if they or any of their close

relatives or kin people were connected in any way with any liability insurance company, any insurance company writing liability insurance.'' This was objected to, and the objection sustained; whereupon, a motion for a mistrial was made, but was by the court overruled.

This was assigned as error both in a motion for a new trial and in the assignment of error now before us. It was also included in a special bill of exceptions which appears in the record. It was not argued in the brief of appellant; but in my opinion it was so manifestly prejudicial that no argument here should be expected or required. Counsel might as well have said to the jury: ''Gentlemen, this is a suit against the defendant individually, but he is not the one who will have to pay any judgment you may see fit to render.''

In the case of Herrin, Lambert & Co. v. Daly, 80 Miss. 340, 31 So. 790, 791, 92 Am. St. Rep. 605, this court said that the question ''could not conceivably throw any light on the issue, and could have no other tendency than to seduce a verdict on the ground that an insurance company, and not the defendants, would be affected.'' This case was cited with approval in the cases of Avery v. Collins, 171 Miss. 636, 157 So. 695, 699, 158 So. 552; and M. & A. Motor Freight Lines, Inc., v. Villere, Miss., 1 So. (2d) 788, decided April 28, 1941. In the Collins case, supra, it was said: ''It would be idle to hold that information respecting insurance may not be given the jurors by evidence, and then permit it, in effect, to reach them by other maneuvers of the plaintiff during the trial.''

Where no motion for a mistrail is made, the court has declined to reverse a number of cases where this prejudicial issue was injected through a witness on the stand, and has based the refusal to do so upon the fact that the motion was not made.

If it is prejudicial to ask a witness such a question I am unable to see how it would make any difference that the question is propounded to the jurors who are to decide the case, when done for the purpose of imparting the same

information that would otherwise be solicited from a witness. Neither do I think that it can be fairly assumed that the question was propounded to the last two jurors of the panel, and to them alone, merely for the purpose of determining their qualifications as jurors, even if we assume that under the authorities cited in the controlling opinion in this case it would be proper to ask the question in good faith for that purpose. The reasonable inference is that the question had not been asked the other ten jurors, because had the question been asked and the objection sustained at the outset, all of the jurors to be finally accepted on the panel would not have had the benefit of the information furnished to the panel as a whole in this case.

Aside from the fact that such a question should never be propounded to a juror except in a proper case, justifying it, the prejudicial effect of the information imparted to the jury in this case should be deemed cause for reversal in this instance, because of the state of the testimony hereinbefore reviewed; and the cause should be reversed, to be tried by another jury.

**Anderson** and **Griffith, JJ.**, join in this dissent.