Shearron *v.* Shearron.

Nov. 23, 1953

No. 38872 44 Adv. S. 52 68 So. 2d 71

28

*Gillespie, Huff & Williams,* Meridian; *Nichols & Huff, T. Marx Huff,* Forest, for appellant.

*Roy N. Lee,* Forest, for appellee.

32

APPELLANT IN REPLY.

Per Curiam.

The facts and the law of this case are set forth herein according to the view of a majority of the Justices on the question of defendant's liability in the opinion written by Justice Holmes, and it is therefore unnecessary that they be set forth in this per curiam opinion. That opinion as to liability is concurred in by Justices Arrington, Kyle, Hall and McGehee, and results in an affirmance of the case as to liability.

But the case is reversed by a vote of a majority of the Justices, namely, Lotterhos, Ethridge, Kyle, Roberds and McGehee for a new trial on the question of damages, for the reasons set forth in the opinion written by Justice Ethridge herein, and in which the said majority of the Justices concur.

Three of the Justices, namely, Arrington, Holmes and Hall are of the opinion that the case should be affirmed both as to liability and damages, for the reasons stated in their dissenting opinion as to the reversal on the question of damages; whereas three other Justices,

namely, Lotterhos, Ethridge and Roberds are of the opinion that the case should be reversed and remanded both as to liability and damages, and for the reasons stated in their dissenting opinion as to the affirmance here of the case on the question of liability.

Therefore the result is that the case is affirmed on the question of liability by the votes of Justices Arrington, Holmes, Kyle, Hall and McGehee; and is reversed on the question of damages by the majority vote of Justices Lotterhos, Ethridge, Kyle, Roberds and McGehee.

Affirmed on the issue of liability and reversed on the question of damages.

*Roberds, Ethridge,* and *Lotterhos, JJ.,* dissent as to affirmance on liability. *McGehee, C. J.,* and *Hall, Kyle, Holmes* and *Arrington, JJ.,* concur in affirmance as to liability. *McGehee, C. J.,* and *Roberds, Kyle, Ethridge,* and *Lotterhos, JJ.,* concur as to reversal for trial on question of damages. *Hall, Holmes* and *Arrington, JJ.,* concur in dissent as to reversal for trial on question of damages. *Lee, J.,* took no part.

HOLMES, J., dissenting in part:

It is my view of this case, concurred in by Justices Hall and Arrington, that the judgment of the court below should be affirmed both as to liability and damages. I therefore concur in the affirmance of the case as to liability, but respectfully dissent as to its reversal for trial on the issue of damages alone. I shall accordingly set forth in this opinion the views in support of the decision of a majority of the justices in affirming the lower court's judgment as to liability and shall also set forth herein the dissenting views of Justices Hall, Arrington and myself, who are of the opinion that the lower court's judgment should likewise be affirmed as to damages.

The case is one in which the appellee, Mrs. Emma Shearron, brought suit in the Circuit Court of Scott

County against the appellant, Helen Burke Shearron, seeking the recovery of damages in the sum of $35,000 for personal injuries alleged to have been sustained while riding as a guest in a 1948 Chevrolet cab truck with dual rear wheels, owned and driven at the time by the appellant.

The unfortunate occurrence out of which the suit arose happened on Sunday morning, between 11 and 12 o'clock on May 18, 1952, about six miles southwest of the village of Stringer, Mississippi, on Mississippi Highway No. 533, which was a comparatively new black top pavement, having been completed in the preceding six or seven months.

The declaration charged that the vehicle involved was a large, heavy vehicle, difficult to drive and control; that the highway was wet and slippery from rain and had numerous curves, bends, and hills in it; that appellant was driving the vehicle at a dangerous, excessive, and unlawful rate of speed without having it under control and without regard for the condition of the highway and the safety of appellee and others using the same, and carelessly and negligently caused the same to run into an embankment, injuring the appellee.

The answer of the appellant denied the charges of negligence in the declaration, and in an amended answer, averred that the accident resulted solely from latent mechanical defects in the truck, of which the appellant, without fault on her part, was unaware, and which was one of the ordinary risks of travel which the appellee assumed.

Upon the submission of the case to the jury at the conclusion of the introduction of evidence, the jury returned a verdict for the appellee in the sum of $17,500, and judgment was entered accordingly, and from this judgment appellant appeals.

It is urged by the appellant that the trial court erred in refusing her request for a peremptory instruction for

the reasons, first, that the proof shows that the wreck resulted from a mechanical defect in the truck of which appellant was unaware, and not from any negligence on the part of the appellant, and that, therefore, the verdict is contrary to the evidence; and, second, that appellee's own testimony contradicts the allegations of her declaration and is binding upon her and defeats recovery.

The proof for the appellee showed substantially the following: The appellant was the owner of a large heavy Chevrolet cab truck with dual rear wheels, which on the occasion in question was being driven by her between 11 and 12 o'clock in the morning on Mississippi State Highway No. 533 about six miles southwest of the village of Stringer, Mississippi; that she was accompanied by the appellee, who was her mother and who was riding as a guest in the truck; that it was raining and the comparatively new black top pavement on which she was traveling was wet; that the highway had curves, hills and bends in it; that the curve which she was approaching and at which the wreck occurred could be seen by her for a distance of 250 or 300 yards; that said curve was a 90 degree curve, and that in approaching it, she descended one incline and ascended another, approaching the inclines and curves at a rate of speed of 45 to 50 miles per hour without diminishing her speed; that when she reached the curve, she was unable to control the truck and negotiate the curve and ran off the highway into an embankment, badly damaging the truck and injuring the appellee; that the right front fender of the truck was badly bent and the right door practically torn off, and the rear right dual wheels driven back.

The testimony for the appellant was given by two mechanics who did not see the wreck but examined the truck afterwards, and expressed the opinion that the truck was caused to go out of the driver's control by reason of a tie-bolt breaking or coming out, causing the drive-shaft to drop and the rear dual wheels to lock.

They would not say that the tie-bolt was not broken and the other damage done to the truck by the heavy blow resulting from the heavy truck's impact with the bank. In rebuttal of this testimony of the appellant, the appellee introduced a mechanic who examined the truck and testified that in his opinion the damaged condition of the truck resulted from its impact with the bank.

According to the testimony of the appellee, which the jury accepted, the appellant at the time of the accident was violating Sec. 8176 of the Miss. Code of 1942, which makes it unlawful for any person to operate a truck at a speed greater than 45 miles an hour and provides that when approaching and going around a curve or approaching a hill crest, the speed must be diminished and that when special hazards exist with respect to certain highway conditions by reason of the weather, the speed must be reduced.

 We think that the overwhelming weight of the evidence clearly establishes the negligence of the appellant, and that such negligence resulted directly and proximately in appellee's injuries. To state the case most favorably to the appellant, however, we think that in view of the fact that the evidence was conflicting to some extent, it is manifest that the trial court committed no prejudicial error in submitting the issue of negligence for the determination of the jury. The jury resolved this issue in favor of the appellee and the verdict of the jury is, in our opinion, supported not only by ample evidence but by the great weight of the evidence.

It is further contended by the appellant, however, that the trial court erred in declining to grant her request for a peremptory instruction upon the ground that the appellee's testimony contradicts the allegations of her declaration and that she is bound by such testimony and precluded thereby from recovery. The appellee testified that she is the mother of the appellant and that the appellant has lived with her all of her life except while she

was away in school; that on the occasion in question, she accepted the appellant's invitation to ride with her in the truck; that she had frequently ridden with her on previous occasions; that it had been raining but she was unable to say whether it was raining at the time of the accident or not, but the windshield wipers were running; that the appellant had been and was running at the time of the wreck at about 45 miles per hour; that she knew nothing about the mechanism of an automobile. In response to interrogatories propounded to her on cross-examination, she testified that her daughter was driving in a careful manner at the time of the wreck and was not driving at an excessive rate of speed. Asked if her daughter was driving in a negligent manner, she replied, "I wouldn't *think* so." Asked if she was driving in a negligent or careless manner, she replied, "I didn't *think* so." She further testified in response to interrogatories that she *believed* that her daughter was using due care for their safety and that she *thought* that the cause of the accident "was because something was wrong with the mechanism of the car."

It is urged with much seriousness by the appellant that the testimony thus given by the appellee is in contradiction of appellee's declaration and that she is bound thereby and precluded from recovery. It will be observed that the testimony of the appellee, which is relied upon by the appellant in support of her contention, amounts to nothing more than expressions of conclusions and opinions. The actual facts within her knowledge to which she testified, namely, that at the time of the accident the appellant was driving at about 45 miles per hour, that it was raining or had been, and that the windshield wipers were running and the windows of the truck closed, and she heard no unusual noise about the truck until it hit the bank, support the charge in the declaration that appellant was negligent in that she was driving a heavy truck on a wet pavement at an excessive rate of speed,

approaching a hill crest and a 90 degree curve without diminishing her speed in violation of Sec. 8176 of the Miss. Code of 1942.

Thus it appears that the facts to which she testified showed that she was honestly mistaken in the opinions and conclusions which she drew therefrom, and that she did not comprehend the nature of the testimony which she gave by way of opinions and conclusions, but that such expressions of opinions and conclusions arose out of reluctance on her part to reflect upon the driving skill of her daughter.

The authorities seem to be in some conflict with regard to the effect of admissions made by a party in his testimony as a witness, but it is generally stated that such admissions should be viewed in the light of all of the circumstances and conditions proved, and if it is doubtful that the party comprehends his own testimony, or if his testimony relates not to matters of fact within his knowledge but is in the nature of opinions or conclusions, the admissions are not conclusive on the party and the court is not precluded from a consideration of all of the evidence. In 31 C. J. S., pages 1173 and 1174, we find the following:

"There has been said to be a conflict of authority with regard to the effect of admissions made by a party in his testimony while a witness in the case and it has been stated generally that such admissions should be viewed in the light of all of the circumstances and conditions proved. However, the admissions of a party in his testimony are as a general rule binding on him and preclude him from avoiding the consequences of his testimony by the introduction of, or reliance on, other evidence in the case unless the circumstances and conditions give rise to the probability of error in the party's own testimony or unless the effect thereof is avoided by some explanation. To bring admissions of the party within this rule it would seem that they must have been deliberate and unequiv-

ocal, that they relate to matters of fact and are positive and definite in their character, and that they are made by a person of mature years and unimpaired mentality. If it is doubtful that a party to the action comprehends his own testimony, or if it is so confused as not to constitute an unequivocal admission, it is not conclusive on such party and the court is not precluded from considering all the evidence.''

In Henry Harlow v. Mamie Laclair, (N. H.), 136 Atl. 128, 50 A. L. R. 973, the court relates some of the circumstances to be considered in connection with a party's adverse testimony, and among them are the nature of the facts to which he testified, that is to say, whether he was simply giving his impressions of an event as a participant or an observer, or whether he was testifying to facts peculiarly within his own knowledge, and also whether his testimony was contradicted by that of other witnesses. Continuing, the Court said:

''If a party's testimony consists only of a narrative of events in which he participated or which he observed, there is an obvious possibility that he may be mistaken like any other witness. In such a situation, if other witnesses give a different version of the occurrence, his testimony must be weighed with theirs, and he will not be concluded by his own statements.''

In the annotation, 169 A. L. R. 803, the principle is stated that the rule that a party is bound by his own testimony has no application to opinions as to which the party may be honestly mistaken. We quote from the annotation as follows:

''Where also the testimony of a party relates, not to a fact peculiarly within his own knowledge and as to which he could not be mistaken, but is in the nature of an estimate or opinion as to which he may honestly be mistaken, he does not unequivocally concede that the fact is in accord with the opinion expressed, and there is no injustice in permitting the court to consider the other

evidence in the case, and determine from all the evidence what the actual facts are. King v. Spencer, (1932), 115 Conn. 201, 161 A. 103, 31 N. C. C. A. 399. In this case, a defendant, in an action against him for alleged negligence in causing an automobile collision, testified that his brakes were bad, that if he had had good brakes and had applied them, he could have stopped in time to avoid a collision. This was held to be only the expression of an opinion, with regard to which he might honestly have been mistaken. Other credible evidence could be considered as controlling it.''

In the light of these authorities and in view of the nature of appellee's testimony, we have reached the conclusion that she is not precluded from recovery by such testimony in the nature of opinions and conclusions, which was contradicted not only by other witnesses but by her own testimony as to actual facts within her knowledge. It is manifest that she did not comprehend the nature of such testimony and that she was honestly mistaken in the opinions and conclusions which she expressed. We find no error, therefore, in the action of the trial court in refusing the appellant's request for a peremptory instruction based upon the ground that the testimony of the appellee contradicted the allegations of her declaration and precluded recovery.

It is further complained by the appellant that the court erred in granting to the appellee two certain instructions. Since the same criticism is directed to both instructions, we quote only one as follows: ''The court instructs the jury for the plaintiff that the law imposes upon the driver of an automobile or truck the duty to use that degree of care and caution which an ordinarily prudent person would exercise under the same or similar circumstances, and, if you believe from a preponderance of the evidence that the defendant, Helen Burke Shearron, failed to use that degree of care and caution in the speed and in the control of her truck which an ordinarily pru-

dent person would exercise under the same or similar circumstances, that such failure, if any, proximately caused or contributed to a collision of said truck with a bank and resulting in injuries to plaintiff, then, it is your sworn duty to return a verdict for the plaintiff.''

The claimed error of this instruction and the other instruction to which exception was taken is that the word ''proximately'' is omitted immediately preceding the word ''contributed.'' In other words, it is argued by the appellant that under the language of the instruction the jury was authorized to return a verdict for the plaintiff if they believed that the negligence ascribed to the appellant contributed to the collision, whether it proximately contributed thereto or not. The appellant contends that the language ''proximately caused or contributed'' should have read ''proximately caused or proximately contributed.'' We think that it is manifest that the word ''proximately'' as used in the instruction modified not only the word ''caused'' but also the word ''contributed.'' We think also that the instructions are not susceptible of the interpretation placed upon them by the appellant and that the court committed no error in granting them.

It is assigned as error by the appellant that the trial court erred in permitting appellee's counsel, over the objection of appellant, to inquire of the jury on their voir dire examination whether any of them worked or had in the past worked for a casualty company or an insurance company, and in overruling appellant's motion for a mistrial based upon such ground. We deal with this assignment in two aspects; first, in the aspect of our dissenting views that such examination of the prospective jurors was conducted by appellee's counsel in good faith in order that the right to challenge jurors peremptorily or for cause might be intelligently exercised, and was proper under the prior decisions of this Court, and constituted no reversible error either as to liability or damages; sec-

ond, in the aspect of the view of three of the justices that the assignment is of such seriousness as to require the reversal of the case both as to liability and damages.

The assignment is based upon the following occurrence in the course of the trial: In the voir dire examination of prospective jurors, appellee's counsel asked the following question: "Do any of you gentlemen now work for a casualty or insurance company—any of you?" Prospective juror James McLemore answered: "I don't now, I have in the past." Appellant's counsel objected and moved for a mistrial. Appellee's counsel stated to the court out of the presence of the jury that he had information that appellant was protected by liability insurance and that his purpose was to inquire concerning the occupation and past occupation of the prospective jurors. The court overruled appellant's objection and motion for a mistrial, and permitted appellee's counsel to also ask the following question: "Have any of you gentlemen in the past ever worked for an insurance, casualty, or indemnity company?" Appellant objected to this latter question and moved the court for a mistrial, which objection and motion were overruled by the court. Counsel for the appellant then elicited the following from the juror McLemore:

"Mr. Huff:

"Q. Mr. McLemore, would it embarrass you to sit in the trial of this case?

"Mr. McLemore: A. I don't know what insurance company is involved, but it could be the same company I was associated with, and it would put me in an embarrassing position to form any decision."

The trial court then took over the examination of the jurors and advised them that only the plaintiff and the defendant were involved in the lawsuit and inquired of the jurors if they would try the case solely between these two parties and base their verdict solely on the evidence and the instructions of the court, and they all said that

they would. The court then excused the juror McLemore. The appellant renewed her objection and motion for a mistrial and her objection and motion were overruled. On the motion of appellant for a new trial, the same ground of error was assigned. On the hearing of this motion, appellee's counsel stated into the record substantially the following: That he had information that Southern Farm Casualty Insurance Corporation was the liability insuror of the appellant; that policyholders of this company are principally farmers and rural people, and that it was necessary for the policyholder to have a partnership in said company prior to obtaining a policy; that it was his further understanding that at least one agent and representative of the company resided in Scott County, and that the principal business of this agent was other than representing the company; that he had no information as to how many other such agents there were in the county and that since the one agent had another occupation other than representing the company, he felt it necessary to make the specific inquiry of the jurors as to whether any of them worked or had in the past worked for a casualty insurance company in order to determine whether the members of the venire would be acceptable to the plaintiff, and that the inquiry was made in good faith. The court overruled the motion for a new trial, saying that in view of the statement of appellee's counsel, he thought he had the right to make the inquiry.

We may say here that we do not think that the response of the juror McLemore to the question of appellant's counsel wherein he replied that he did not know whether the insurance company which he worked for was the same company involved in this case, has any bearing upon the problem here presented. This response was brought out by defendant's counsel and this Court has definitely held in the cases of Petermann, et al. v. Gary, 210 Miss. 438, 49 So. 2d 828, and Lancaster v. Lancaster, 213 Miss. 536, 57 So. 2d 302, that where reference to liability insurance is

brought out by the defendant or his counsel, the defendant is in no position to take advantage of the rule announced in Herrin v. Daly, 80 Miss. 340, 31 So. 790, to the effect that evidence of liability insurance is not admissible.

It appears from this record that appellee's counsel had good reason to make the specific inquiry of the jurors. It is not likely that a juror whose principal occupation was farming, but who had represented the Southern Farm Casualty Insurance Corporation in placing one or two policies, would have deemed this latter activity an occupation, and a general inquiry would not likely have elicited the specific information. The fact that the specific inquiry disclosed that there was a juror on the venire who had previously worked for an insurance company demonstrated the necessity for such inquiry. The trial court was manifestly of the opinion that appellee had made the inquiry in good faith, and there is nothing in this record to indicate to the contrary, and in fact, his good faith is not questioned. He was acting within his rights according to the prior pronouncement of this Court, as a brief analysis of our prior decisions will show.

It was held in the early case of Herrin v. Daly, 80 Miss. 340, 31 So. 790, that evidence to prove that the defendant carried liability insurance is inadmissible and the ruling in this case has since been repeatedly recognized. The first case presenting to this Court the particular question here involved was the case of Yazoo City v. Loggins, 145 Miss. 793, 110 So. 833, decided December 13, 1926. In that case, on the voir dire examination of the jurors, counsel for plaintiff was permitted to ask the jurors whether they were interested in or represented any insurance company engaged in writing indemnity insurance, and this was assigned as error. This Court, in passing upon the assignment, called attention to the case of Herrin v. Daly, supra, holding it to be reversible error to admit evidence of liability insurance carried by the defendant, but added: "This rule does not prohibit counsel from testing within

reasonable limits and in good faith the qualifications of proposed jurors in respect to their connection with, or interest in, any indemnification the defendant may have, or their interest in, or connection with, any company engaged in like business." The court commented that this was permissible in order that the right to challenge jurors peremptorily or for cause might be intelligently exercised. The Court further said: "Such an examination is proper so long as it is conducted in good faith to discover the state of mind of the jurors as regards such interests . . ." It was further stated in the opinion of the Court that the trial court should limit such an examination to one conducted in good faith for the purpose of ascertaining the qualifications of the jurors. The observation was made in the Loggins case that such an examination may usually be conducted in such a manner as not necessarily to disclose the existence of insurance in the particular case and that the trial court should not allow questions tending to prejudice the minds of the jurors because of the existence of such insurance. But the Court expressly held, however, that the good faith of counsel sufficiently appeared and that the questions propounded by him on the voir dire examination of the jurors did not constitute reversible error.

The case of Lee County Gin Company v. Middlebrooks, 161 Miss. 422, 137 So. 108, decided October 19, 1931, expressly followed the ruling in the Loggins case. In the Middlebrooks case, counsel for the plaintiff, in qualifying the jury was permitted to ask them on their voir dire examination whether or not they had any stock in any insurance company or interest therein. This was assigned as error and in passing upon this assignment, this Court held that the case of Yazoo City v. Loggins, supra, was directly in point and against the contention of the appellants. The Court added: "There is nothing in the record to show that the question was not asked in good faith."

The assignment was accordingly held not to be well taken and the judgment of the court below was affirmed.

In the case of Mississippi Ice and Utilities Company v. Pearce, 161 Miss. 252, 134 So. 164, decided May 4, 1931, the Court again dealt with the question of the disclosure of liability insurance before the jury. In that case, the appellant introduced as a witness Dr. W. W. Eley, who testified that while the plaintiff was in the hospital, he called to see her, having been sent by the Company. The witness was then asked by plaintiff's counsel if it were not a fact that he went there as the representative of the insurance company, and he answered ''no''. The defendant's counsel objected and asked that a mistrial be entered, which objection and motion were overruled by the court. This Court, in holding that there was no reversible error and in affirming the case, said: ''The court below has found that the counsel for appellee acted in good faith in asking such questions, for he said that his client had told him that the doctor stated to her that he was the representative of an insurance company, and the questions asked after the jury was withdrawn tends to show that counsel was sincere in his belief that the witness for the defendant on the occasion of his visit to the plaintiff was representing an insurance company . . . We think the court was warranted in overruling the motion and in declining to withdraw the case from the jury and order a mistrial.''

In the case of Avery v. Collins, 171 Miss. 636, 157 So. 695, decided November 19, 1934, the Court reaffirmed the basic ruling in the Loggins case to the effect that the plaintiff has the right so long as acting in good faith to ascertain the qualifications of the jurors, and that the matter of their connection with the business of insurance is a matter of pertinent inquiry. The Court said that the plaintiff no less than the defendant is entitled to a fair jury and added: ''Hence it was held in Yazoo City v. Loggins that because the plaintiff had the right so long

as acting in good faith to ascertain the qualifications of the jurors, the matter of their connection with the business of insurance was pertinent in insurable cases.'' In this case the Court reaffirmed the observation made in the Loggins case that such an examination may usually be conducted in such a manner as not necessarily to disclose the existence of insurance in the particular case, and the Court added a corollary whereby the jurors may be asked their occupation and whether they have any other occupation. The Court was careful to say, however, that there may be cases in which there will be no reasonable method of getting at the question of insurance connection except to interrogate the jurors specifically on that point. The question arose in the case of Avery v. Collins, supra, as the result of a question propounded to the jury by plaintiff's counsel inquiring whether any of the jury were engaged in the business of accident and indemnity insurance, to which there was an objection by the defendant and a request that the court expressly admonish the jury that the matter of insurance had nothing to do with the case. The court sustained the objection but refused in the presence of the jury to grant the defendant's request to admonish the jury that the matter of insurance had nothing to do with the case and was not to be considered by them. Because of the court's refusal to grant this request to so admonish the jury, the judgment of the court was affirmed as to liability but reversed as to damages. The basic ruling in the Loggins case, however, was adhered to.

In the case of M. & A. Motor Freight Lines, Inc. v. Villere, 190 Miss. 848, 1 So. 2d 788, decided April 28, 1941, it was assigned as error that the plaintiff's counsel in interrogating a witness had disclosed to the jury the question of insurance coverage. In that case, there were certain photographs of the scene of the collision which were desired to be introduced in evidence. The photographs were authenticated by a written certificate of the

photographer who was not available as a witness. Such certificate attested that it was executed "in the presence of Mr. Fernandez of the New Amsterdam Insurance Company." This disclosure in the certificate was objected to by the defendant's counsel, and plaintiff's counsel consented that the photographs be introduced without the quoted language and such was done. During the cross-examination of a photographer who caused the pictures to be taken, plaintiff's counsel asked the witness the following:

"Q. Did you get a call to take these pictures?

"A. Yes, sir.

"Q. Who called you?

"A. I was called by the New Amsterdam Insurance Company."

A motion to exclude this statement and to grant a mistrial was made by the defendant and overruled by the court, at which time the court stated to the jury that they "will pay no attention to the answer given by the witness and there will be no further comment on it." The Court held to be error the action of the trial court in refusing to exclude the statement of the witness to the effect that he was called by the New Amsterdam Insurance Company. The ruling in the Loggins case, however, was not disturbed. In fact, the Court therein recognized the holding in the Loggins case that jurors may be asked upon their voir dire examination whether they are interested in or represent any company writing indemnity insurance so long as counsel is acting in good faith. The Court recognized the corollary set forth in the case of Avery v. Collins following a like observation in the Loggins case.

In the case of Kennedy v. Little, 191 Miss. 73, 2 So. 2d 163, decided May 12, 1941, the Court in no uncertain terms upheld the ruling in Yazoo City v. Loggins, supra, Lee County Gin Company v. Middlebrooks, supra, and Avery v. Collins, supra. In that case, the jurors on their

voir dire examination were asked if they or any of their relatives or kin people were connected in any way with any liability insurance company or any insurance company writing liability insurance, to which the defendant objected and the objection was sustained. Defendant thereupon made a motion for a mistrial, which motion was overruled and this was assigned as error on the appeal from a judgment for the plaintiff. So well established, however, had become the recognized ruling in the Loggins case that counsel for the appellant did not argue the assignment, but the correctness of the trial court's ruling was challenged in the conference of judges and the question was therefore considered. Chief Justice Smith, in rendering the opinion of the Court, said that the reason why counsel for appellant did not argue the assignment appears in Yazoo City v. Loggins, Lee County Gin Company v. Middlebrooks, and Avery v. Collins, "which put at rest, or should so do, the right of a litigant to propound in good faith similar questions to jurors on their voir dire examination in order that the right to challenge jurors peremptorily or for cause may be intelligently exercised." Continuing, the Court said: "In those cases, the court permitted the question, while here they were not permitted and the good faith of counsel in asking them is not challenged. The ruling in the Loggins, Middlebrooks, and Collins cases, supra, is in accord with that in practically all of our sister states as will appear from an examination of the note to Stehouwer v. Lewis, 74 A. L. R. 860." Hence the court held that the assignment of error was not well taken and affirmed the judgment.

A composite view of all of these prior decisions would seem to clearly establish the right of a litigant to propound in good faith questions of the nature here involved to jurors on their voir dire examination in order that the right to challenge peremptorily or for cause may be intelligently exercised, and while a method of examination

to avoid disclosure of the existence of liability insurance has been suggested in the case of Avery v. Collins, supra, that case recognizes the fact that there are cases in which the specific inquiry may become necessary. Such a case is the one at bar. Appellee's counsel stated his reasons for wanting to make the specific inquiry. The trial judge heard his statement and determined the necessity for the specific inquiry and the good faith of counsel and permitted the examination. To hold that his action constitutes reversible error under the facts of this case would do violence to the Loggins case, as well as the subsequent decisions which adhered to the principles announced therein. It is accordingly the conclusion of the writer of this opinion, concurred in by Justices Hall and Arrington, that the assignment of error based upon the voir dire examination of the jurors is not well taken.

A majority of the justices are of the opinion that the trial court committed reversible error in permitting appellee's counsel to propound to the jurors the questions to which exception was taken, but that such action of the court was prejudicial only on the issue of damages, and that, therefore, the judgment of the court below should be affirmed as to liability and reversed and remanded for trial only on the issue of damages. The reasons in support of this view are that the great weight of the testimony shows that appellant was negligent, resulting in appellee's injuries. The proof shows that she was driving a heavy cab truck with dual rear wheels on a wet pavement, traveling at a rate of speed of 45 to 50 miles per hour, approaching a hill and a 90 degree curve, without diminishing her speed, in violation of the statute, and lost control of the truck and injured the appellee. The only defensive evidence was that of two mechanics who did not see the wreck, but examined the truck after the wreck, and expressed the opinion that the cause of the wreck was a latent defect in the truck, namely, a broken tie bolt. They would not say, however, that the tie bolt

had not become broken as a result of the impact of the truck with the bank. In rebuttal of this, appellee introduced an experienced mechanic who had examined the truck and expressed the opinion that the tie bolt broke as a result of the impact with the bank. Appellant's proof consisted entirely of opinion evidence, and even this proof did not exclude the probability that the tie bolt was broken by the heavy impact of the truck with the bank. The appellee's proof is uncontradicted by any witness who purported to testify as to actual facts within his own knowledge. The weight of this testimony for the appellee was so great that the jury could not in reason have found for the defendant on the issue of liability, and any verdict to the contrary would have been against the overwhelming weight of the evidence. Hence, it is the conclusion of a majority of the justices that the method of examining the jurors on their voir dire examination to which exception was taken could have had no prejudicial effect upon the jury in their determination of the case on the issue of liability.

It is further assigned as error that the damages are excessive. Appellee was injured on May 18, 1952. She was taken immediately to the hospital at Ellisville. Her injuries were so extensive and of such nature that she could not be moved and taken to the X-ray room for X-ray examination until June 20, 1952. She was confined in the hospital until June 28, 1952. When she arrived at the hospital, she was in a state of shock, was bleeding freely, and was administered first-aid for loss of blood. She had multiple injuries. She had multiple lacerations on the right leg and right knee, and a laceration of the lower lip caused by her teeth penetrating the lip. Two of these teeth were so embedded in the wound that they had to be extracted. The index finger on her right hand was severed. Her right wrist was broken. She had multiple fractures of the ribs on one side and her lung was punctured and air was escaping through the tissues of

the thorax. Her right wrist and hand are a total loss to her, and severe pain has accompanied her injuries. This pain has been enhanced to the extent of becoming excruciating because of the lack of calcium in her rib bones. She was, and is, unable to tolerate any form of sedative or narcotic to relieve her pain. Her injuries are permanent and she will continue to suffer severe pain from her injuries for the remainder of her life. She was 78 years of age at the time of the infliction of her injuries. No proof was made of her life expectancy. Her hospital bill was $509.80 and her doctors' bill was $250.00. The jury awarded her $17,500. This Court is warranted in disturbing the amount of the verdict only upon the ground that the verdict is so grossly excessive as to evince bias, passion, or prejudice on the part of the jury. A mere recital of the appellee's serious and permanent injuries and the excruciating pain which she has suffered, and must continue to suffer for the remainder of her life, justifies the amount of the jury's verdict. The determination of the amount was largely a question for the exercise of the sound discretion of the jury, unaffected by bias, passion, or prejudice. Louisville & N. R. Co. v. Whisenant, et al., 214 Miss. 421, 58 So. 2d 908. In the case of St. Louis-San Francisco Ry. Co. v. Dyson, 207 Miss. 639, 43 So. 2d 95, the Court said:

"The fixing of an amount to be awarded as damages in a personal injury case is peculiarly within the province of the jury, and with its decision this Court cannot interfere unless the verdict is not supported by competent and credible evidence and unless it is so large as to manifest bias, prejudice, and passion on the part of the jury, and, as sometime said, to shock the conscience."

Stress is placed upon the age of appellee at the time of her injuries. The probable duration of her life was a matter for the determination of the jury. If it be conceded that her life expectancy is short, it is no doubt true that the jury took into consideration the proven fact that

she must pass the remaining years of her life, whatever that may be, permanently maimed and suffering excruciating pain. Such was the province of the jury and the amount of the award is amply supported by the uncontradicted evidence as to the nature and extent of appellee's injuries and the permanence thereof, and the excruciating suffering which she must endure for the remainder of her life.

This opinion, in so far as it expresses support of the view that the judgment of the court below should be affirmed, and dissent from the view of the majority of the justices that the lower court's judgment should be affirmed as to liability and reversed for trial only on the issue of damages, is concurred in by Justices Hall and Arrington. The views expressed herein on the question of appellant's liability are concurred in by Justices McGehee, Hall, Kyle, and Arrington.

ETHRIDGE, J., concurring in part and dissenting in part:

A majority of the judges, namely, McGehee, Roberds, Kyle, Lotterhos, and the writer, are of the opinion that this case should be reversed for a new trial on the question of damages, and to that extent this opinion expresses the views of the judges on that issue. The basis of that position is the highly prejudicial effect of the injection into the case on plaintiff's voir dire examination of jurors of the existence of liability insurance.

It is also my view of this case, concurred in by Judges Roberds and Lotterhos, that for the same reason the case should be reversed and remanded on liability as well as on damages, and this opinion registers a dissent to that extent.

The facts are covered substantially in the opinion of Judge Holmes, and I will not lengthen this opinion by recounting them; but some additional remarks on the factual issues are pertinent. This is a rather unusual but not a solitary type of case. Weyen v. Weyen, 165 Miss. 257, 139 So. 608 (1932) ; Lancaster v. Lancaster, 213

Miss. 536, 57 So. 2d 302 (1952). A mother is here suing her daughter for personal injuries received by her while riding as a guest in her daughter's truck. The mother, appellee-plaintiff, lives with her daughter, appellant-defendant, and the defendant takes care of her mother. There were only two people in the truck at the time of the collision, appellant and appellee. Both of them testified that appellant was driving carefully and was not negligent. Yet the Court is affirming the judgment on liability, despite testimony and admissions of plaintiff.

Appellee-plaintiff, Mrs. Emma Shearron, testified concerning appellant in part as follows: "Q. Prior to the day of the accident, had you ridden with her on a good many occasions? A. Indeed I had. She had had a truck for several years and I rode with her. Q. Is she a careful driver? A. Indeed, she is one of the most careful drivers I have ever rode with. Q. Is she a fast driver? A. No, sir. Q. Do you observe what she does when the weather changes and on crooked roads? A. Yes. Q. On this day, were you afraid of the manner in which she was driving the car? A. No, sir. Q. At the time of the accident, you had felt no fear from the way she was handling the truck? A. No, sir. . . . Q. At the time of this wreck you tell this jury that Miss Helen Burke Shearron was driving in a careful manner? A. She certainly was driving in a careful manner. Q. Mrs. Shearron, I believe you answered that on this occasion Miss Helen was driving in a careful manner. Was she driving her truck in a careful manner? A. I told you she was. Q. Was she, or not, driving at an excessive rate of speed? A. She was not. Q. Was she driving in a negligent manner? A. I wouldn't think so. I wasn't afraid to ride with her. Q. You had ridden with her a great number of times? A. Yes. Q. You didn't think that she was driving in a negligent manner or a careless manner? A. I didn't think so. Q. You do believe that she was using due care for her safety and yours? A. Yes. Q. You couldn't say what caused the

accident? A. I think it was because something was wrong with the mechanism of the car. Q. Do you and your daughter live together? A. Yes. Q. Have you lived together for sometime? A. Excepting her school years, we have always lived together. Q. You say, except for her school years you have always lived together? A. Yes. Q. You share the same home? A. We do. Q. She cares for you like a daughter would a mother? A. I consider her a very good daughter. She takes care of me.''

Both plaintiff and defendant agreed that the collision of the truck into the embankment was caused by something which happened to the mechanism of the car which took it out of appellant's control. There was some testimony that appellant was driving between 45 to 50 miles per hour, although both appellant and appellee testified that she was not driving over 45 miles per hour. Two mechanics testified for appellant. In their opinions the collision was caused by the tie bolt breaking on the rear of the truck and the drive shaft dropping so as to cause the two right rear wheels to lock. It was said that a worn tie bolt could not be detected by the usual inspection of a truck. In rebuttal, a mechanic testified for appellee that from his examination of the truck the tie bolt was broken because of the impact of the truck into the bank. The testimony of both appellant and appellee, who were the only ones in the truck, supported appellant's version that the tie bolt broke and then caused the truck to get out of control and run into the bank; and that that was the sole, proximate cause of the accident. The mechanic who testified for appellee in rebuttal gave his opinion that the tie bolt broke from the impact. He did not see the accident and was not in the truck at the time. His opinion-testimony is the only evidence which contradicts the testimony of both appellant and appellee that there was a sudden mechanical accident which caused the mechanism of the truck to get out of control and which then threw it into the embankment.

Appellant's defense was that the accident was caused by a hidden or latent mechanical defect in the truck, which was not known to appellant and which by reasonable care she could not have ascertained; and that therefore the injuries to appellee were not caused by any negligence of appellant, but by such latent defects. Monsour v. Farris, 181 Miss. 803, 181 So. 326 (1938); Green v. Maddox, 168 Miss. 171, 149 So. 882, 151 So. 160 (1933); Anno. 138 A. L. R. 838 (1942); 5 Am. Jur., Automobiles, Secs. 235, 251, 254. Whether there was a latent defect in the truck and whether it was the sole, proximate cause of the accident, or whether appellant was driving at an excessive rate of speed under the circumstances and such negligence contributed to the accident were questions for the jury.

However, I do not agree with the statement in the opinion of Justice Holmes that the "overwhelming weight of the evidence clearly establishes the negligence of the appellant." On the contrary, I am of the opinion that on the facts the issue of negligence vel non was a close question to be properly submitted to the jury without the injection into the case of prejudicial matter such as whether appellant was insured. Here a 78 year old mother, who lives with and is cared for by her daughter is suing that daughter for negligence. Yet the mother in her own testimony admits that the cause of the accident was something happening to the mechanism of the truck, and that the defendant in her opinion was not negligent. Certainly under the peculiar circumstances of this case the issue of negligence vel non should have gone to the jury unprejudiced by the wholly irrelevant question of whether appellant had liability insurance.

Nevertheless, at the beginning of the trial on voir dire examination, the jury was clearly told by inescapable inference by the appellee's attorney that the appellant was protected by liability insurance. Appellee's attorney first stated to the jury, "I know most of your occu-

pations, but I want to specifically inquire concerning some.'' Appellee's attorney then, without any preliminary questions, asked the jury "Do any of you gentlemen now work for a casualty or insurance company?'' James McLemore, a prospective juror, answered "I don't now. I have in the past.'' Appellant made proper objections to this line of interrogation which were overruled, and moved for a mistrial, which motion was overruled. Appellee's attorney then continued his voir dire examination: "Q. Mr. McLemore, you say you don't now, but have in the past? A. Yes. Q. Do any of you other gentlemen work for a casualty company or insurance company? (None answer in the affirmative.) Q. Have any of you other gentlemen in the past worked for such company? (No one answers in the affirmative.)''

In the absence of the jury appellee's attorney then stated into the record that he had knowledge that the defendant was covered by liability insurance. Appellant's objections and motion for mistrial having been overruled, appellant's attorney then interrogated McLemore, as follows: "Mr. McLemore, would it embarrass you to sit in the trial of this case? A. I don't know what insurance company is involved, but it could be the same company I was associated with and it would put me in an embarrassing position to form any decision.'' The significant aspect of this answer is that it shows clearly that McLemore, along with the other prospective jurors, had naturally inferred that some insurance company was involved as a defendant in this case. The court excused McLemore, and then instructed the jury that this was a lawsuit strictly between the plaintiff and defendant, and that they would decide the issues only between those two parties. After the verdict was rendered, the motion for a new trial set up the above errors in the voir dire examination. Appellee's attorney then stated in the record that he had information that a certain insurance corporation was a liability insurer of the defendant, and that

at least one agent of that company resided in the Ring-gold Community in the county; and that the voir dire questions to the jurors concerning insurance were for the purpose of ascertaining whether any member of the venire had worked for that or any other insurance company. The motion for a new trial was overruled.

 A majority of the judges, McGehee, Roberds, Kyle, Lotterhos, and the writer, are of the opinion that the method of interrogating the jurors on voir dire, used by appellee, wholly failed to comply with the requirements of the Mississippi decisions, and necessitates a reversal and a new trial on the issue of damages alone; and that the size of the verdict, $17,500, in favor of a 78-year-old appellee with no proof of life expectancy, against her daughter, was very probably affected by the voir dire examination indicating defendant was covered by liability insurance. In Herrin, Lambert and Company v. Daly, 80 Miss. 340, 31 So. 790 (1902), plaintiff's counsel asked a defendant if there was anyone back of his firm who would satisfy plaintiff's judgment. An objection to this was overruled, and on appeal the case was reversed. Judge Calhoun said that the question "could not conceivably throw any light on the issue, and could have no other tendency than to seduce a verdict on the ground that an insurance company, and not the defendants, would be affected." This Court up to the present time has consistently followed that principle, making exceptions only where the defendant was responsible for the injection of the insurance issue.

There are five Mississippi cases dealing with the limited circumstances under which prospective jurors can be interrogated on voir dire concerning their connections with a liability insurance company. In Yazoo City v. Loggins, 145 Miss. 793, 110 So. 833 (1926), counsel for plaintiff had asked jurors, "especially an insurance agent who was a member of the panel," on voir dire examination, whether they were interested in or represented any

insurance company engaged in writing indemnity insurance. The Court held that this was not reversible error, and that such an examination was proper so long as it was conducted within reasonable limits and in good faith to discover the state of mind of the juror; and that the court should limit such an examination to one "conducted in good faith." But it then said: "Such an examination may usually be conducted in such a manner as not necessarily to disclose the existence of such insurance in the particular case, and the court should not allow questions tending to prejudice the minds of the jurors because of the existence of such insurance." Lee County Gin Company v. Middlebrook, 161 Miss. 422, 137 So. 108 (1931), cited Yazoo City v. Loggins. However, *Middlebrook* is distinguishable, because after the trial court had overruled defendant's objection to the question, counsel for defendant then stated to the jury, "We don't object to that, though: the insurance company we had our insurance in is busted, the Home Insurance Company." Hence under these circumstances the Court in effect observed that appellant could not argue error, where he waived his objection by such a statement.

Three years later, in Avery v. Collins, 171 Miss. 636, 157 So. 695 (1934), the Court considerably limited the rule in Yazoo City v. Loggins. Appellee was administratrix of her son's estate. He was thirteen years of age at the time appellant's car collided with him on a public highway and killed him. The Court thought that the evidence as to negligence of appellant was clear. On voir dire plaintiff's counsel asked whether any of the jury was engaged in the business of accident or indemnity insurance. Objection to this was overruled, and the court also refused to admonish the jury that the matter of insurance had nothing to do with the merits of the case. The Court observed that this type of voir dire examination was a "maneuver" to evade the rule in Herrin v. Daly; and that in the Loggins case the Court

had pointed out that "such an examination may usually be conducted in such a manner as not necessarily to disclose the existence" of insurance. The Court then said: "Reaffirming that observation of the court, we would now add as a corollary thereto that the proper means of ascertaining the qualifications of a tendered juror in respect to his insurance connections is to ask him what business he is engaged in, and, if he answer, for instance, that he is a farmer, then the further precautionary question may be put to him whether he has any other business or business connections, and, if he answer that he has not, that usually ought to end the privilege so far as inquiry into his insurance connections are concerned. There may be cases, nevertheless, wherein it will happen that there will be no reasonable method at getting at the question of the juror's qualification on the issue of his insurance connections except by interrogatories which will disclose that the defendant in the particular case is probably insured, but the trial judge should see to it that the necessity exists in the particular case, . . ."

In fine, the Court stated "the proper means" to be followed, and then said that in certain rare cases there might not be any reasonable method of getting at the question of the juror's qualification except by a direct question concerning insurance. The *Avery* decision to that extent overruled or modified the *Loggins* case, outlined a nonprejudicial procedure for a voir dire examination in this respect and held that a direct question concerning insurance would be available on voir dire only in rare cases.

In M. and A. Motor Freight Lines, Inc. v. Villere, 190 Miss. 848, 1 So. 2d 788 (1941), on the trial in chief, plaintiff's counsel while cross-examining a photographer testifying for defendant asked him who requested the photographer to take the pictures, to which he replied with the name of an insurance company. The court instructed the jury to pay no attention to the witness' response.

The Court, in holding this to be reversible error, reaffirmed Avery v. Collins and its limitations upon the *Loggins* case; stated again that the *Loggins* rule would be applicable only in "rare cases"; and held with approval that in Avery v. Collins "emphasis was appropriately placed upon the prejudicial effect of the disclosure rather than upon the motive for its adduction." We agree with these statements in *Avery* and in *Villere,* and would observe that the good faith test is impractical. As indicated in *Villere,* the test should be whether the line of interrogation used here was necessary in order for plaintiff on the facts in the particular case to qualify the jury. Such necessity would exist only in rare cases. We wish to state at this point that nothing said herein should be construed as a reflection upon the able and honorable counsel for appellee.

In Kennedy v. Little, 191 Miss. 73, 1 So. 2d 163 (1941), the Court affirmed a verdict for plaintiff by a three to three vote. Counsel for plaintiff on voir dire had asked two prospective jurors if they were connected with any liability insurance company, but the trial court sustained an objection to those questions. Appellant did not argue this issue in his brief. The controlling opinion pointed out that the trial court sustained objections to the questions; and held that under these circumstances there was no reversible error, citing Yazoo City v. Loggins.

Walley v. Williams, 201 Miss. 84, 28 So. 2d 579 (1947), reaffirmed what the Court had said in the *Villere* case. On the trial a juror had interposed a question as to whether the plaintiff was paying for insurance, to which the plaintiff had begun to answer "the company paid . . . ." The Court held that this was reversible error, as was an instruction granted plaintiff. Judge Griffith, who wrote the opinion in Avery v. Collins, said:

"But appellee makes the unique argument that we should now lay aside all our previous decisions about insurance in cases such as this, beginning with Herrin

v. Daly, 80 Miss. 340, 31 So. 790, 92 Am. St. Rep. 605, because appellee says that at the present day most jurors know, as a matter of current information, that all enterprises employing more than a few workers carry liability insurance, and that when that issue is injected into the trial, the jurors are furnished no information beyond that which most of them already know.

"For the reasons stated in the quotation found in Odom v. Walker, 193 Miss. 862, 11 So. 2d 452, and turning also to what was said in M. & A. Motor Freight Lines v. Villere, 190 Miss. 848, at pages 857 to 859, 1 So. 2d 788, we not only reaffirm what was held in those cases, but affirm that we have no intention to qualify or recede from them in the slightest. Moreover, we must decline to consider that jurors are aware as a matter of current knowledge that all employers carry liability insurance; but if we should accept that proposition as true, we would be confronted with the deeper question whether trials before jurors of personal injury cases would be valid under the due process clause of the federal constitution, . . ."

██ In the present case a majority of the judges, McGehee, Roberds, Kyle, Ethridge and Lotterhos, are of the opinion that the method followed here in interrogating the jurors on voir dire was not in accord with, and was a complete departure from, the procedure established in the foregoing cases, and particularly in Avery v. Collins, which considerably limited the doctrine of the *Loggins* case; and that this failure to comply with the rule of Avery v. Collins necessitates a reversal of this case for a new trial on the issue of damages alone. On voir dire appellee's attorney should have followed the types of questions suggested in *Avery*, or others of a similar nature. We do not think that this was one of those "rare cases" in which no other interrogatories would suffice except those disclosing that the defendant is probably insured.

In view of the peculiar nature of this case, and the testimony of both plaintiff and defendant, three of the judges, being Roberds, Lotterhos and the writer, are of the opinion that the case should be reversed and remanded as to both liability and damages; that the factual issue on liability is close, and that a new jury should pass on it, along with damages, without the case being obfuscated and prejudiced by the irrelevant issue of liability insurance. To that extent this opinion constitutes a dissent from the controlling decision.

## ON SUGGESTIONS OF ERROR

Jan. 25, 1954 50 Adv. S. 62 69 So. 2d 801

PER CURIAM.

On November 23, 1953, this Court, by a per curiam opinion, held by a majority vote that the above styled cause should be "Affirmed on the issue of liability and reversed on the question of damages." The opinion discloses the division of opinion among the eight Judges who participated in the decision, and what Judges concurred in the several views set forth therein. In addition to the per curiam opinion which set forth the names of the respective Judges who concurred in different views as to what should be done with the case, there was a written opinion by one of the Judges which set forth the views of the majority as to why the case should be affirmed on the question of liability, and also set forth the dissenting views of three of the Judges to the effect that the same should have been affirmed both as to liability and damages. Another was written by Judge Ethridge which set forth the views of a majority to the effect that the case should be affirmed on liability and reversed on the question of damages, and wherein there was expressed the views of three Judges dissenting as to that result, since they were of the opinion that the case

should be reversed for a new trial both on the question of liability and the question of damages. The case is reported in Advance Sheet No. 44, p. 52, of the Mississippi Reports, and the Advance Sheet of the Southern Reporter to Vol. 68 So. 2d 71, neither of which are yet shown in the bound volumes of the said reports.

A Suggestion of Error was filed on behalf of the appellee on December 3, 1953, and on December 23, 1953, a Suggestion of Error was filed by the appellant; it being contended in the former that we should have affirmed the case both on liability and on the question of damages; whereas, in the latter, it is contended that the case should have been reversed both as to liability and on the question of damages.

However, after a full and careful consideration of both Suggestions of Error and in conference, we have concluded that since a majority of the Judges are still of the opinion that the prejudicial error for which the case was reversed and remanded should be applied only to the question of the amount of the damages allowed by the verdict of the jury, and are of the opinion that any other verdict than that of liability on the issue of negligence would not have been justified, the case should remain affirmed on the question of liability in any event, and that the same should be reversed on the question of damages unless the plaintiff shall, within ten days from the rendition of the decision herein on these Suggestions of Error, enter a remittitur of $5,000 so as to reduce the amount of the judgment from $17,500 to the sum of $12,500. The per curiam opinion heretofore rendered is therefore modified accordingly; and the Suggestion of Error filed on behalf of the appellee is sustained in part and overruled in part; and that filed on behalf of the appellant is overruled.

Affirmed on liability and damages with remittitur.

All Justices concur except *Gillespie* and *Lee, JJ.,* who took no part.

ON SUGGESTION OF ERROR

Mar. 15, 1954 57 Adv. S. 31

PER CURIAM.

In a Per Curiam opinion rendered on November 23, 1953, this Court by a majority vote affirmed the judgment of $17,500 appealed from in the above styled cause, insofar as liability for damages to the plaintiff is concerned, but reversed the cause for a new trial on the question of the amount of damages. Advance Sheet No. 44, p. 52, to the Mississippi Reports, and Advance Sheet to Vol. 68 So. 2d 71.

On December 3, 1953, the appellee, who was the plaintiff in the trial court, filed a Suggestion of Error and urged in her brief in support thereof that the case should have been affirmed both as to liability and on the question of the amount of damages. It was further suggested in the brief that in the event the Court should adhere to its decision that prejudicial error had been committed upon the trial of the case, and that such error influenced the amount of the verdict, we should require a remittitur to be entered by the appellee instead of ordering a reversal of the case for a new trial as to the amount of damages, since the testimony in the record now before us fully discloses the nature and extent of her injuries, and as much so as could be done on another trial.

On December 23, 1953, the appellant filed a Suggestion of Error in which it was contended that the case should have been reversed for a new trial both on the question of liability and damages. In her brief in support of this Suggestion of Error, no response was made to the appellee's suggestion that a remittitur be entered instead of requiring a new trial on the question of damages.

On January 25, 1954, in a second Per Curiam opinion, reported in Advance Sheet No. 50, p. 62, to the Mississippi Reports, and Advance Sheet to Vol. 69 So. 2d 801,

we required that a remittitur of $5,000 be entered within ten days thereafter, which was accordingly done.

In other words, we overruled the appellant's Suggestion of Error and then sustained the appellee's Suggestion of Error in part and overruled it in part. The latter should not have been sustained either in whole or in part without first calling on the appellant for a reply thereto. Under Rule 14 (3) of this Court it is provided that "No reply to a suggestion of error shall be filed, unless the Court, by special rule or otherwise, shall call therefor."

On February 10, 1954, the appellant filed a motion for a stay of judgment and for permission to file a reply to the Suggestion of Error of the appellee. We thereafter considered this motion, stayed the judgment, and granted permission to the appellant to file a reply to the brief of the appellee, to the extent that such brief had urged the entry of a remittitur instead of a new trial on the question of damages, it having been called to our attention that the appellant had theretofore failed to make such reply in observance of the said Rule 14 (3) of this Court. The appellant's brief in support of her own Suggestion of Error, filed on December 23, 1953, had otherwise covered her contentions in answer to the Court's action on November 23, 1953, as reported in Advance Sheet No. 44, p. 52, to the Mississippi Reports, and the Advance Sheet of the Southern Reporter to Vol. 68 So. 2d 71.

 We are now in receipt of, and have duly considered, the appellant's reply to the suggestion made by the appellee for a remittitur to be entered in the event the Court should still be of the opinion that the case should not be affirmed both as to liability and damages, and have reached the following conclusion, to-wit: to adhere to our second per curiam opinion rendered on January 25, 1954, hereinbefore referred to, wherein we required that a remittitur of $5,000 be entered, which was done so as to reduce the judgment from $17,500 to the sum

of $12,500. In view of all of the facts and circumstances set forth in our previous opinions in this case, which are being reported in 219 Miss. 27, 68 So. 2d 71, we deem this to be the best solution of the present controversy, though not as a precedent to follow under different circumstances where the amount of the verdict is deemed to have been influenced by prejudicial error upon the trial. A final judgment is to be accordingly entered in the sum of $12,500, thereby reducing the original judgment from $17,500 to the extent of the $5,000 remittitur entered, the result being that the Suggestion of Error filed by the appellee is overruled in part and sustained in part.

Suggestion of Error overruled in part and sustained in part.

A quorum of the Judges including *McGehee, C. J.,* and *Hall, Kyle, Holmes* and *Ethridge, JJ.,* concur in this Per Curiam opinion. *Gillespie* and *Lee, JJ.,* being disqualified, took no part.