THOMAS M. TUCKER ET AL. v. MARY M. DONALD.

1. EVIDENCE. *Cross-examination as to immaterial matter. Impeaching testimony. Practice.*
    It is admissible to cross-examine a witness as to matters collateral or immaterial to the issue involved in the case, though it is not allowable to impeach his testimony in reference to such matters. But where the court permits such cross-examination against objection, and then admits in evidence impeaching testimony which is not objected to, no error can be predicated of the court's action on either point.

2. SAME. *Medical book, Admissibility thereof.*
    In the trial of a case involving a question as to the effect of paralysis on the human arm, it is improper for the court, where objection is made, to admit as primary evidence an extract from a medical book, such as Copeland's Medical Dictionary, no matter how highly it may be esteemed as an authority by the medical profession.

APPEAL from the Chancery Court of Clay County.

Hon. GEORGE WOOD, Chancellor, specially presiding by exchange with Hon. F. A. CRITZ.

The opinion of the court upon the former appeal in this case (59 Miss. 594), contained a statement of facts which may be appropriately reproduced here : " A few days after the death of P. W. Tucker there was found among his private papers a will bearing date about eighteen months before his death, perfect in all its parts, except that the name had been torn from it. By its provisions a considerable portion of his estate was devised to his niece, Miss Mary M. Whitehead, and the residue directed to be equally divided among his brothers and

sisters. The deceased was a bachelor, and his brother, Thomas M. Tucker, was known to have had free access to his papers during the period intervening between his death and the finding of the mutilated will. The niece, believing the mutilation had occurred after death, offered the will for probate, and upon proof satisfactory to the clerk and chancellor, it was duly admitted to probate in common form in the Chancery Court of Clay county. Subsequently a portion of the heirs at law, including the brother towards whom suspicion pointed as the mutilator of the document, instituted this proceeding for an issue *devisavit vel non.*'' That appeal was taken from a decree based upon a verdict in favor of the validity of the will, and the decree was reversed and the cause remanded because of error committed by the court in the admission of evidence and in instructing the jury.

Upon the second trial of the issue in the court below another verdict was rendered in favor of the validity of the will, and from a decree in accordance therewith this appeal was prosecuted. After the reversal of the former decree Miss Mary M. Whitehead became Mrs. Mary M. Donald, and the style of the case has been accordingly changed. A statement of the matter in controversy upon this appeal will be found in the opinion of the court.

*Barry & Beckett*, for the appellants.

It was error to force S. P. Brabson to state on his cross-examination whether he had told Miller, Katz, and C. B. Whitehead that he believed Thomas Tucker tore the name from the will. It was done to contradict him, and on an immaterial point. It is too well settled, to need reference to authority, that a witness can only be made to state facts, and that his opinions and beliefs are incompetent, and a general objection will reach such evidence, for it is altogether incompetent. The question of paralysis of the right arm of the deceased, P. W. Tucker, was the point upon which proponents almost wholly hinged their case; assuming that it would have been impossible for the deceased to have torn the signature from

the will, for that very reason, by the right hand. It was assuredly competent for the witness, Dr. Crump, to cite Copeland's Medical Dictionary as an authority on that topic corroborating his testimony, or explaining it more fully ; or, to go further, to refer to that or any standard work to refresh his memory, so that he could enlarge upon the point under consideration and add, if need be, to what he had already said. See 1 Whart. on Ev., sect. 666. That such is the practice in this State — to read received authorities on any material point in issue, in an argument to the jury — we think will not be denied. This privilege is even extended into the domain of curiosity and social ethics. See *Cavanah* v. *The State*, 56 Miss. 295, where the prosecuting counsel read, not only an elaborate dissertation of his own on duelling, but embellished and fortified it with copious extracts from Sabine on Duels.

We assume that the medical science is an inductive or speculative one ; therefore look at the matter from a standpoint most favorable to proponents. See 1 Whart. on Ev., sects. 665 and 666. Works on speculative or inductive sciences are excluded as evidence ; but, says the learned writer, when such books are connected " with expert testimony, they become simply part of such testimony, and lose their independent substantive character as books. See 1 Whart. on Ev., sect. 665. Admitting, then, that medical science is a speculative or inductive one (which it is not) this extract, if read by Dr. Crump, as an expert in that branch of which it treats, would have become his own and admissible to go to the jury as evidence. If the science of medicine is to be treated as among the exact sciences its books are admissible as primary evidence. 1 Whart. on Ev., sect. 667.

*F. G. Barry*, of counsel for the appellants, argued the case orally.

*J. E. Leigh*, on the same side.

1. S. P. Brabson was the leading witness for the contestants ; he was the legal adviser of the decedent and the heirs just subsequent to the death of the alleged testator ; was fa-

miliar with his affairs, and testified that, "he was sent for by Thomas M. Tucker and Mrs. Whitehead, the mother of the contestee, and sister of the deceased, who, together, sent for him and inquired as to the execution of a will, stating that the alleged will had been destroyed by the testator in his life time by his tearing his name therefrom as he had informed them before his death. This was a day or two after the death and previous to the finding of the will in the drawer of the desk of the testator with the name torn off, which was done by the sister, Mrs. Whitehead, in the presence of Thos. M. Tucker, the brother, on the Sunday after the death on Tuesday. Mrs. Whitehead, the mother of the contestee, now denies this fact, and becomes a leading witness for her daughter, contradicting Brabson, the attorney, and mayor of West Point. Brabson is the most important witness in the case. He contradicts the sister and supports the brother in his testimony. His relation as legal adviser of the deceased designates him above all others as the one who should have known of the execution of a will. To do away with this important testimony, which should have been conclusive to the jury, divers witnesses were introduced, to wit: C. B. Whitehead, the father of the deceased; one Berry Miller, and one M. Katz, who testified that S. P. Brabson told them that he believed Thos. M. Tucker tore the name from the will. Brabson denies that he ever so stated; but, if he had, the statement was illegitimate evidence. Brabson's opinions could not be stated by himself when on the stand; and how, then, could parties be allowed to testify as to what he said he testified? A contradiction of the principal witness for the contestants, when the testimony was wholly conflicting on this matter of opinion, was calculated to impress the jury unfavorably as to Brabson's whole testimony, and doubtless had much to do with the verdict, which for this error alone should be set aside so as to give contestants a fair trial. If improper testimony be admitted in cases where the testimony is conflicting, the case will be reversed even if without such improper testimony the judgment might have been

the same. *Scarborough* v. *Smith*, 52 Miss. 577 – 523. It must be remembered that it was not a fact that Brabson is reported to have stated, but an opinion " that he believed Thos. M. Tucker tore the name from the will." This was clearly inadmissible. " The opinions of witnesses are in general not evidence." Greenl. on Ev., sect. 440.

2. The refusal of the court to permit counsel to read to the jury the article from Copeland's Medical Dictionary, in regard to paralysis. It was in proof that the right hand of the deceased had been paralyzed ; and Dr. Fant and others were introduced, who testified, that in their opinion deceased could not have torn the name from the will as when found. Appellant's counsel, in their argument to the jury, wished to read an extract from Copeland's Medical Journal, which was acknowledged to be standard authority, to controvert this expert testimony, and establish the fact that partial paralysis, such as that which afflicted deceased, did not incapacitate him from such act. The refusal of the court to permit this was an infringement of the privilege of counsel in their argument. *Perkins* v. *Gray*, 55 Miss. 183 ; *Cavaniah* v. *The State*, 56 Miss. 299 ; Abbot's Tr. Ev., 699.

*Frank Johnston*, on the same side.

It was error in the court to allow the witness Brabson to be contradicted in respect to a matter that was not relevant or material to the issue. The issue was whether the decedent had torn his name off, and also indirectly whether Thos M. Tucker had torn the signature to the will. Mr. Brabson's opinion that Thos M. Tucker had or had not torn the will, and his opinion as to whether Thos. M. Tucker was " mean enough " to do it, were wholly irrelevant and immaterial. Not only was Brabson contradicted on an immaterial point, but they had the force of his opinion as to Thos. Tucker's meanness. " It is only in such matters as are relevant to the issue that the witness can be contradicted," is Prof. Greenleaf's text in stating the limits of the rule. 1 Greenl. on Ev., sects. 462, 463.

The testimony of Dr. Crump, witness for the proponent, was

designed to produce the impression that the decedent's right arm was useless from paralysis, and that the tearing was done by a right hand.   On the other hand, the testimony of an expert witness for the contestant tended to prove that voluntary muscular action of the fingers of the right hand might coexist with general paralysis of the right arm.   If the one was material and important to the proponent, the other was no less valuable to the contestant.   The book was Copeland's Medical Dictionary.   I presume the court judicially knows this to be a scientific work on medicine, as it knows the character of Taylor's Medical Jurispudence.   The proposition of counsel to the chancellor was this :   " We propose to call the attention of the witness to the work of a standard author on the subject now before the court, that we may refresh his mind, and ask his opinion in respect thereto."   And the action of the court was a refusal to allow any extract from a standard medical work on the subject to be read to or by the witness for any purpose. Wharton says the course proposed to be pursued is not unusual and is allowable.     1. Whart on Ev., sect. 666 ; see also *Corey* v. *Silcox*, 6 Ind. 39 ; 40 Ind. 516 ; 30 Wis. 614 ; 26 Ala. 558 ; 27 Ala. 441 ; *Pierson* v. *Hoag*, 47 Barb. 243.

*Frank Johnston*, also made an oral argument.

*F. A. Critz*, for the appellee.

1. Medical books are not competent evidence.    Upon this point the authorities are not uniform, but the decided weight of authorities is in favor of the exclusion of such evidence.   An expert may cite authorities as agreeing with him, and may refresh his memory by referring to standard works in his specialty ; but such witnesses are not permitted to read such books as primary evidence.   An expert in the science of medicine may refer to medical books as a part of his general knowledge, or his judgment or opinion may be founded upon such books ; but the unsworn statements of medical writers will not be allowed to go to the jury.   1 Whart. on Ev., sects. 666, 667, 668, and 438 ; 1 Greenl. on Ev., sect. 440, p. 492, note 1 ; 2 Best on Ev., sects. 868, 869 ; *Collier* v.

*Simpson*, 5 Car. & P. (24 Eng. C. L.), 74; *Corks* v. *Purday*, 2 Car. & Kir. (61 Eng. C. L.) 270; *Commonwealth* v. *Sturdivant*, 117 Mass. 139; *Washburn* v. *Cuddihy*, 8 Gray, 431; *Ashworth* v. *Kittridge*, 12 Cush. 149; *Commonwealth* v. *Wilson*, 1 Gray, 337; *The State* v. *Terrell*, 12 Rich. 321; *Lunning* v. *The State*, 1 Chand. 178; *Carter* v. *The State*, 2 Ind. 619; *Harris* v. *Panama*, 3 Bosw. 7; *Fowler* v. *Lewis*, 25 Texas Sup. 380; *Wade* v. *Dewitt*, 20 Texas Sup. 398; *Morris* v. *Horner*, 7 Pet. 558; *Melville* v. *Easly*, 1 Jones L. — ; *The State* v. *O'Brien*, 7 R. I. 338, 339; *Yoe* v. *The People*, 49 Ill. 12; *Orilway* v. *Haynes*, 50 N. H. 164, 165; 2 Beck's Med. Jur. 962, 963. We have found but three authorities that clearly hold the contrary doctrine, to-wit: *Standenmeir* v. *Williamson*, 29 Ala. 565, 568; *Merkel* v. *The State*, 37 Ala. 139; *Bowwan* v. *Woods*, 1 Greene Iowa, 441; and the case of *Merkle* v. *The State* is based upon *Standenmeier* v. *Williamson*, which expressly follows *Bowman* v. *Woods*, and *Bowman* v. *Woods* professes to follow 2 Beck on Med. Jur., which holds the very doctrine we are now contending for. 2 Beck on Med. Jur., 962, 963. Besides, *Bowman* v. *Woods* is not respected as authority in Iowa. It was decided in 1848, and in 1872 the Supreme Court recognized that the rule contended for in that case was not the rule of law outside of the statute of that State. "Before the enactment of the above statute (making scientific works, etc., competent evidence), books of science were not generally (if they ever were) regarded as competent evidence." *Broadhead* v. *Wiltse*, 35 Iowa, 431; Rev. Code (1860) Iowa, sect. 3995 (2903). It is now insisted by counsel that they had a right to read said medical book in their argument to the jury. This right was not denied them. They did not offer to read the book in their argument. If they had made such an attempt the right would not have been denied. We objected to the reading of the book as evidence, and this was the objection sustained. The only objection as to Brabson's testimony is as follows: "Question objected to and objection overruled." This ob-

jection is to our question asking Brabson if he did not tell
Katz and Miller that he believed Thomas M. Tucker tore the
name off the will. No ground of objection is stated, and no
exception taken. Besides, the witness answers in the nega-
tive. So that it is impossible for his testimony on this point
to hurt appellants. But the object of this question being
to lay a predicate for contradiction, it is insisted that the con-
tradiction is on an immaterial point; but no such objection was
made at the trial, and appellants not only waived their objec-
tion, thereby failing to except, but they made no objection
whatever to the testimony of Miller and C. B. Whitehead,
when they testified contradicting said Brabson as to the mat-
ters here inquired about. The objection as to the materiality
of the predicate is certainly waived, if the testimony intro-
duced to contradict the witness, upon the predicate laid, is
introduced without objection.

This contradiction of Brabson was not upon an immaterial
point.

*F. A. Critz*, also argued the case orally.

*Fred. Beall*, on the same side.

I waive a discussion of the general proposition of the right
to introduce in evidence to a jury books upon scientific sub-
jects. Judge Critz has fully discussed that branch of the ques-
tion. Admitting that such books are competent, still there
was no error in the court below on this point. The following
is all there is in the record on this point: " The book here
handed to the witness is Copeland's Medical Dictionary.
Counsel for contestants offer to read an extract from Cope-
land's Medical Dictionary, or to hand it to the witness to
read, and offer to ask the said witness, as a medical expert, if
the extract offered states a correct opinion as received among
physicians, counsel stating that the extract referred to par-
alysis of the arm, with a view of allowing the said extract to
be read to the jury. And counsel for proponent objected,
which objections were sustained by the court, and exceptions
taken. " Crump had not testified that he knew what the

opinion of physicians upon this extract was, or what the opinion of physicians upon that question was. It is like a question as to character — you must state first, as a witness, that you know the general character, and then the witness can state what it is. No predicate had been laid, and therefore the objection was good, and the very general exceptions bad. *Russell* v. *The State*, 53 Miss. 367. Further, it was not the opinion of the witness that was asked, but was the opinion of others. This was clearly incompetent. Some physicians — one-horse pill-bag fellows — might have an opinion that old Copeland was good authority; but this opinion might not be the generally well received opinion among learned men of the medical profession. Evidence offered must be pertinent to the issue, and if excluded, its pertinency must be shown, or there will be no error. *Cole* v. *Harmon*, 8 Smed. & M. 562; *Dyson* v. *The State*, 4 Cush. 362. The evidence on this point was excluded upon a general objection, and the action of the court is presumed to be correct. *Dyson's Case, supra.* It was necessary for the contestants to have shown that the testimony offered was competent, pertinent and relevant. *Townsend* v. *Blewett*, 5 Head, 503; *Torrey* v. *Fisk*, 10 Smed. & M. 599; *Heath* v. *Newman*, 11 Smed. & M. 201.

*Fred. Beall* made an oral argument also.

CHALMERS, J., delivered the opinion of the court.

This case was heretofore before us and is reported in 59 Miss. 594. Two juries have, by their verdicts, declared that the will of P. W. Tucker was mutilated after his death by the hand of a spoliator, and we must accept their finding as conclusive, supported as it is by testimony which seems to have warranted it. Two alleged errors of law only are seriously pressed upon our attention.

Brabson, a witness for the contestants, having testified to important facts on their behalf, was, upon cross-examination, questioned as to certain statements alleged to have been made by him upon an immaterial matter only remotely connected

with the issue. When the question was propounded it was objected to.; but the objection being overruled, the witness answered that he had not made, the statement attributed to him in the interrogatory. Subsequently two witnesses, introduced by the proponent for the purpose of contradicting him, testified that he had made the statement to them. To the introduction of the testimony of these witnesses no objection was interposed. The action of the court under these circumstances was not erroneous. It is generally admissible, and often advantageous, to cross-examine upon collateral or even immaterial matters, and the refusal of the court to sustain the objection as to this was correct.

Contestant's objection was not directed to the right point. While it was entirely proper to cross-examine on the immaterial matter, it was not allowable to impeach the witness as to that matter. But to the impeaching testimony there was no objection, and the court having ruled correctly on the only objection made was not bound to extend it to a point where it would have been applicable and interpose it of its own motion.

There being in the case some question as to the effect of paralysis on the human arm (the investigation being calculated, as was thought, to throw some light on the inquiry whether the deceased, who was paralyzed, had or had not torn his own will), the contestants introduced a physician to testify as an expert on this subject, and while he was on the stand offered in evidence a copy of Copeland's Medical Dictionary, and proposing to prove its high character in the medical profession, offered to read some extracts from it to the jury, counsel stating (as the bill of exception recites) " that the extracts referred to paralysis of the arm, with a view of allowing said extracts to be read to the jury."

We cannot regard this, under the statement of the bill of exceptions, as a proposition that the expert should read the book as corroborative or explanatory of his own testimony, nor as a request that counsel should be permitted to make it a part of their argument. As to the admissibility of a book of

science for either of these purposes the authorities are divided, it not unfrequently being held to be a matter resting in the sound discretion of the court. The proposition here, as we understand it, was to introduce the extracts as primary evidence before the jury, and viewed in this light, it was clearly inadmissible, as held by the great weight of authority. Extracts from such a book could be no more than a written statement of the opinion of the author, expressed perhaps many years before, liable to subsequent change or modification, not delivered under oath or in the presence of the court, with no opportunity for cross-examination by the other side, nor of explanation and application to the particular facts of the case in hand by the author. However high, therefore, may be the general character of the work, it lacks every safeguard which distinguishes hearsay from legal evidence, and stands, therefore, upon a far inferior and wholly different footing from the testimony of the humblest expert.

There is a class of books which are admitted before the jury as primary evidence; but these are such as relate to sciences deemed exact, or such as by long use in the practical affairs of life have come to be accepted as standard and unvarying authority in determining the action of those who used them.

To the first-class belong almanacs, astronomical calculations, tables of logarithms and the like, to the second tables of life expectations in matters of insurance. The following, among other authorities, hold the rule announced by us as to the inadmissibility of the proferred evidence in this case: 2 Beck's Med. Jur. 963, *et seq.* ; 1 Greenl. on Ev., sect. 440, and note; 1 Whart. on Ev., sects. 665–666; 5 Car. & P. 74; 1 Gray, 337; 8 Gray, 431; 117 Mass. 139.

Affirmed.