247 Miss. 308 (1963)
152 So.2d 710
GALLOWAY
v.
SINGING RIVER ELECTRIC POWER ASSOCIATION, INC.
No. 42583.
Supreme Court of Mississippi.
May 6, 1963.
Cumbest & Cumbest, Clyde O. Hurlbert, Pascagoula, for appellant.
Merle F. Palmer, Pascagoula; Daniel, Coker & Horton, Jackson, for appellee.
*310 GILLESPIE, J.
Plaintiff-appellant sued defendant-appellee for personal injuries sustained by electric shock. Upon conclusion of the evidence for both parties the trial court *311 granted appellee a peremptory instruction. Judgment was entered for defendant and plaintiff appealed.
Appellee is an electric cooperative engaged in the distribution of electrical energy to its members. In 1939 it obtained an easement to construct and maintain power lines across the Stringfellow property at Escatawpa, Mississippi, and constructed a power line across a portion of said property. It is not clear whether there was a residence on the property at that time, but if not, one was built thereon sometime later. This residence burned about 1956 and was replaced by the present house which was being used as a residence by Milmon W. Stringfellow and his family on February 7, 1959, when the accident involved in this case occurred. The Stringfollows had maintained a television antenna at the residence since about 1957, but increased the height by 15 feet to a total of 27.5 feet about three months before February 7, 1959.
The Stringfellow residence was a one-story frame building facing Griffin Road, which was about thirty feet from the house. There were no power line poles on the Stringfellow property. There was a pole on each side with the wires passing across the front of the Stringfellow property between the house and the road. The perpendicular plane of these power lines was 11.5 feet from the northeast corner of the house, and 17.1 feet from the northwest corner. The lower neutral wire was 20 feet 10 inches from the ground. The top wire carrying 7600 volts of electricity was 23 feet 5 inches from the ground. These wires were not insulated. The television antenna was 27 1/2 feet high. Affixed to the top of the antenna mast were horizontal rods extending about half the distance between the antenna mast and the power lines. The bottom end of the antenna mast rested on the ground and the mast was fastened to the eave near the northeast corner of the house.
*312 Appellant had visited the Stringfellows several times a year for several years but he had not noticed the power lines running across the front yard. After dark on February 7, 1959, Stringfellow asked appellant to assist in lowering the television antenna in order to repair it. Appellant placed his automobile so that the lights shone on the bottom of the antenna. The porch light was also turned on to furnish light. Stringfellow used a step ladder to reach and loosen the fastner holding the antenna mast to the house. Stringfellow had his foot against the bottom of the mast and both men were holding it, letting it down toward the power lines. The antenna came in contact with the power lines. Stringfellow was killed and appellant rendered unconscious.
The only assignment of error argued is that the trial court erred in granting a peremptory instruction for defendant-appellee. This assignment of error has three main points of inquiry.
Was compliance by the utility with the minimum safety requirements of the National Electric Safety Code conclusive on the question of due care?
The proof showed without dispute that the power lines were constructed across the Stringfellow property in accordance with a proper easement and that in constructing and maintaining said power lines appellee complied with the minimum requirements of the National Electric Safety Code. The Rural Electrification Administration prescribed standards for the construction and maintenance of power lines and the power lines in question complied with those requirements. The National Electric Safety Code was adopted by the Mississippi Public Service Commission as guiding principles for overhead line construction practice.
(Hn 1) The National Electric Safety Code contains minimum requirements and constitutes guiding principles in the construction and maintenance of electric *313 power lines. It is not conclusive on the question of due care by the utility. Compliance with the safety code is a relevant fact on the question of due care. If appellee had failed to comply with the minimum requirements of the National Electric Safety Code it would probably be chargeable with negligence per se, and compliance relieves the utility of that charge. We hold that compliance with the minimum standards contained in the National Electric Safety Code is not conclusive on the question of due care when the particular circumstances justify a finding of lack of due care. Elliott v. Black River Electric Coop. (S.C.), 104 S.E.2d 357, 74 A.L.R. 2d 907; Anno. 69 A.L.R. 127, et seq. Whether a utility is negligent despite compliance with the Safety Code is ordinarily a question for the jury. Johnson v. Monogahela Power Co. (W. Va.), 123 S.E.2d 81.
Was appellee charged with notice of the conditions prevailing on the Stringfellow property?
(Hn 2) It was not shown that appellee had any actual notice of the fact that the antenna was being maintained near and higher than the power lines. In Delta Electric Power Assn. v. Burton, 240 Miss. 209, 126 So.2d 866, it was said that if power lines safely constructed later become unsafe because of something done by another, the operator of the power lines cannot be held liable for injuries growing out of the unsafe condition unless it knew, or in the exercise of due care should have known, of the unsafe condition. In that case, the utility had actual notice of the condition resulting in the injury. (Hn 3) In the case at bar, the jury should be permitted to determine whether appellee should have known of the conditions existing on the Stringfellow property. Appellee was required to exercise the highest degree of care in the maintenance of the power lines. It is common knowledge that in most, if not all, parts of Mississippi not within the immediate area of a television station, practically all houses contain televisions, even the humblest. *314 In these areas the antennas extend to considerable heights. The jury would be justified in finding that in the exercise of the proper degree of care appellee should have known of the proximity of Stringfellow's television antenna to its power lines. We hold that the question of notice was for determination of the jury.
Was some injury from the relative positions of the antenna and the power lines reasonably foreseeable?
This Court has said in many cases that one charged with negligence is not relieved of liability because a particular injury could not be foreseen, if some injury ought reasonably to have been anticipated. Four-County Electric Power Assn. v. Clardy, 221 Miss. 403, 73 So.2d 144, 44 A.L.R. 2d 1191; Southern Pine Electric Power Assn. v. Denson, 214 Miss. 397, 57 So.2d 859, 59 So.2d 75. Danger itself is not synonomous with negligence, but it is a factor. The jury would be justified in finding that some injury would probably result when a television antenna is maintained within a few feet of high tension power lines, especially when the antenna is higher than the power lines. If the wind should blow the antenna across the power lines the wiring system of the house would probably be charged with electricity, thus endangering the people in the house and the house itself. The photographs in this case showed the interior of the living room where the sockets were burned out. Any miscalculation in lowering the antenna could result in injury or death. Considering the highly dangerous nature of electricity, we hold that the jury would be justified in finding that appellee should have anticipated some injury from the maintenance of the power lines in such relation to the antenna.
We have carefully considered the cases relied upon by appellee from other states involving television antennas. Most of these cases arose in jurisdictions where contributory negligence is a bar of recovery. One turned on an erroneous instruction. We are of the opinion that *315 under Burton and the cases cited therein, the case at bar was one for submission to the jury on proper instructions. We are of the opinion that this holding is in accord with the weight of opinion elsewhere. Anno., 69 A.L.R. 2d 9, et seq.; Hardware Mutual Casualty Co., et al. v. Tampa Electric Company, (Fla.) 60 So.2d 179, 40 A.L.R. 2d 1293; Elliott v. Black River Electric Cooperative, (S.C.) 107 S.E.2d 357, 74 A.L.R. 2d 904.
We hold that the trial court erred in declining to submit this case to the jury on proper instructions.
Reversed and remanded.
McGehee, C.J., and Kyle, Arrington and Ethridge, JJ., concur.