224 So.2d 216 (1969)
The CATHOLIC DIOCESE OF NATCHEZ-JACKSON, operating as St. Joseph School, Defendant/Appellant,
v.
Cecil J. JAQUITH, Mrs. Betty B. Jaquith, Cecil J. Jaquith, Jr., Ann Jaquith Wilson, Margaret Lynn Jaquith, a minor, appearing by Cecil J. Jaquith, Father and Next Friend, Plaintiffs/Appellees.
No. 45349.
Supreme Court of Mississippi.
June 9, 1969.
Rehearing Denied July 3, 1969.
*219 Satterfield, Shell, Williams & Buford, Carey E. Bufkin, James P. Cothren, Jackson, for defendant-appellant.
Bowling & Coleman, Jackson, for plaintiffs-appellees.
*217 PATTERSON, Justice:
This cause began in the Circuit Court, First Judicial District of Hinds County, when the plaintiffs, Cecil J. Jaquith and family, brought suit against the defendant, the Catholic Diocese of Natchez-Jackson, for the wrongful death of Robert Earl Jaquith, their son and brother, respectively. The case was tried before a jury which returned a verdict of $50,000 for the plaintiffs. From that verdict and judgment the defendant appeals to this Court.
On September 13, 1967, Robert Earl Jaquith sustained a fatal head injury while playing basketball during a physical education class in the gymnasium of St. Joseph High School in Jackson, Mississippi. The injury occurred when young Jaquith lost his balance while attempting to score a goal. He had "dribbled" the ball for some distance and without interference from other players jumped into the air in an attempt to make a "layup" shot. As he descended, he lost his balance and his forward momentum carried him out of bounds and into the concrete wall behind the goal. His head struck the wall and then the floor. There were no protective mats on the gymnasium wall at the time of the accident.
Jaquith was stunned by the fall, but was revived shortly thereafter by the physical education instructor. He was semi-conscious at this time and complained that his head hurt. When it was concluded that his condition was serious, the instructor transported the youth to St. Dominic's Hospital by automobile. During this interval he continued to complain of pain in his head and became nauseated. He was admitted to the hospital and remained in a semi-conscious state the remainder of that day and the following night. He was unable to recognize his parents during this time and when the pain did not subside, it was determined that he should undergo surgery. The surgery revealed a blood clot in the right temporal area of the brain accompanied by swelling and a certain amount of dead tissue. He died on September 15, 1967, without regaining consciousness following the surgery.
Suit was filed by the surviving members of his family for damages. They alleged that the defendant was negligent and liable in failing to provide protective padding behind the goal in its gymnasium so as to prevent injuries to athletes utilizing the facility, and that this negligence was the proximate cause of the injury resulting in the death of young Jaquith; that the defendant was negligent in failing to instruct the deceased as to the danger of the concrete wall; and further, that defendant was negligent in constructing the wall from concrete blocks. The trial centered upon the theory of negligence due to the defendant's failure to provide protective padding upon the wall to the rear of the goal.
During the trial the defendant made numerous objections to the introduction of evidence. The introduction of such evidence, or the attempts to do so and the argument of appellees' counsel to the jury, are now the primary subjects of this appeal. *220 The appellant assigns as error the following:
1. The introduction of two books or pamphlets concerning custom or practice of other gymnasiums in using safety mats.
2. The introduction of evidence to show custom, usage and practice without the proper predicate having been laid.
3. The court should have declared a mistrial because of the nature of statements made by appellees' attorney during voir dire examination, the course of the trial, and closing arguments.
4. The court's refusal to grant a directed verdict, peremptory instruction or judgment notwithstanding the verdict.
5. The verdict was against the weight of the evidence.
6. The verdict is grossly excessive.
7. The granting of certain instructions for the plaintiff and refusal to grant certain instructions for the defendant.
8. The refusal of the court to grant a new trial.
By the first assignment of error the appellant maintains that the lower court erred in permitting the introduction into evidence of the statement, "Gym walls should be equipped with wall mat protection," found on page 14 of a pamphlet entitled "Youth Fitness for Mississippi," as well as the statement, "For safety reasons, padding should be installed on all walls in back of baskets," found on page 99 of a book entitled "Planning Areas and Facilities for Health, Physical Education and Recreation." These publications were introduced as exhibits to the testimony of Kermit Davis, the Assistant Supervisor of Physical Education with School Health Services, a branch of the Mississippi State Board of Education. This agency serves in an advisory capacity to secondary schools within the state in regard to their physical education programs. The pamphlet, "Youth Fitness for Mississippi," was prepared by Russell Lyons in his capacity as State Superintendent of School Health Services and was used by the agency in carrying out it functions. The second publication was prepared by the American Association for Health and Physical Education which is the national counterpart of the state organization which employed Mr. Davis and Mr. Lyons. The appellant objected to the admissibility of the quoted portions of both documents, but such objections were overruled, the judge stating that they were admitted "* * * to show the custom of the community and so forth in reference to this particular question and for that reason I am admitting it and for no other reason."
The appellant contends that the introduction of these books was erroneous because (1) the authors were not present for cross-examination, (2) they were not introduced to substantiate the opinion of the witness, and (3) the documents were not shown to be obligatory on the secondary schools of Mississippi nor upon the appellant particularly. The general rule in this state, as elsewhere, is that books, pamphlets and treatises are not admissible into evidence to prove facts contained therein since they are generally considered hearsay evidence dealing with subjects on which living witnesses could be called to testify. 29 Am.Jur.2d Evidence § 884 (1967). There are exceptions to this general exclusionary rule whereby some documents dealing with the more exact sciences may be admitted into evidence. This rule was stated as follows in the early case of Tucker v. Donald, 60 Miss. 460, 470 (1882):
There is a class of books which are admitted before the jury as primary evidence; but these are such as to relate to sciences deemed exact, or such as by long use in the practical affairs of life have come to be accepted as standard and unvarying authority in determining the action of those who used them.
Another exception to this general exclusionary rule is governmental safety codes and regulations. A majority of the *221 states follow the rule that such codes are admissible only when they have been given compulsory force by the state legislatures. See 75 A.L.R.2d 778 (1961) and 30 Am.Jur.2d Evidence § 1003 (1967). The minority viewpoint that safety codes, rules, and regulations or standards which are issued by governmental bodies, but have no binding force, are admissible into evidence as an expert opinion, is followed in a few states and is expressed in such decisions as City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264, 122 A.L.R. 637 (1939); Alabama Power Co. v. McIntosh, 219 Ala. 546, 122 So. 677 (1929). Mississippi has followed the majority rule for a number of years and we think properly so. See Mississippi Power & Light Co. v. Whitescarver, 68 F.2d 928 (1934). See also Crouch v. Mississippi Power & Light Co., 193 So.2d 144 (Miss. 1966) and Mississippi Power & Light Co. v. Walters, 248 Miss. 206, 158 So.2d 2, 160 So.2d 908 (1963).
In responding to this assignment of error we do not attempt to distinguish the present situation from those which exist in the cases cited by the appellant. However, the basis for a clear distinction exists since the books are not in the nature of scientific knowledge, expert treatise or safety code as is true in the cited cases. For the purpose of this decision we will assume, but not decide, that the introduction of the material in question was probably erroneous under our rules of evidence.
It is our opinion, however, that the admission of the statements in the books was harmless error under Mississippi Supreme Court Rule 11 (1967), and therefore, is not sufficient to require a reversal. Rule 11 states:
No judgment shall be reversed on the ground of misdirection to the jury, or the improper admission or exclusion of evidence, or for error as to the matter of pleading or procedure, unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice.
In 5 Am.Jur.2d Appeal and Error section 776 (1962) we find the following discussion in regard to harmless error:
To warrant reversal, two elements must be shown: error, and injury to the party appealing. Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case; it is prejudicial, and ground for reversal, only when it affects the final result of the case and works adversely to a substantial right of the party assigning it. Obviously, in order for the rule of harmless error to be called into play in support of a judgment, the judgment must be otherwise supportable, and will be reversed when there is nothing in the pleadings or evidence to support it * * *
The matter is further discussed in Brown v. Addington, 233 Miss. 435, 102 So.2d 365 (1958). There the Court stated that the instances in which Rule Number 11 may be applied fall generally into two categories:
1. Where the error is so slight that no one could have been misled thereby even if the evidence is in substantial conflict, and
2. Where the error is substantial, but from the records it is apparent that no impartial jury could have reached any other verdict.
See also Revised Rules of the Supreme Ct. of Miss., 29 Miss.L.J. 372 (1958).
We are of the opinion that the situation which exists here is covered by the second rule set out in Brown, supra. Assuming that the admission of the documents was error, and applying the doctrine, we simply cannot state with any degree of confidence that the jury could have reached any other verdict in view of the evidence on behalf of the plaintiffs. It portrays quite graphically the distance from the out-of-bounds line to the unprotected concrete wall to be seven feet three inches. They amply *222 proved their case without reference to the books. The evidence therein was cumulative and not decisive of the case. Additionally, we are of the opinion that the statements, "Gym walls should be equipped with wall mat protection," and "For safety reasons, padding should be installed on all walls in back of baskets," elicited from the books was innocuous. It was nothing more than common knowledge and added nothing to that which was evident to any ordinary person. We do not think from the facts and circumstances of this case that the jury was misled or deceived by this evidence. Thus, we find no merit in this assignment of error.
Appellant next contends that the lower court should not have allowed evidence of custom and usage to have been introduced. The basis for this objection is that by the use of testimony to prove the general custom of using protective padding on gymnasium walls adjacent to basketball arenas the court allowed the appellees to create a false standard of care. Put simply, they contend the appellees misled the jury to equate custom with negligence by evidence on custom and usage.
Though argued strenuously by the appellant, we do not find from the record any suggestion that negligence was tested solely by custom and usage. The danger of defining negligence in terms of a departure from custom was recognized by the Court in Robinson v. Turfitt, 192 Miss. 160, 4 So.2d 884 (1941). However, the evidence in each case and the Court's instructions relative thereto are the determining factors as to the standard used by the jury in its deliberations. Prosser on Torts section 33 (3d ed. 1964), explains the reason why such an equation between the two elements should not occur. He states that customs which are entirely reasonable under one set of circumstances may be unreasonable when any one of a number of variables is changed. In 38 Am.Jur.Negligence section 317 (1955) we find that:
The degree of care which is required of a person either to prevent injury to another or to protect himself is reasonable care under the circumstances. Although subject to certain qualifications, the rule is that upon the issue of negligence or contributory negligence, evidence of the ordinary practice or of the uniform custom, if any, of persons in the performance under similar circumstances of acts like those which are alleged to have been done negligently is generally competent evidence.
Evidence of custom and usage in any event is not the ultimate test of negligence, but is admissible solely for the purpose of assisting the jury, along with other evidence, in determining whether the conduct of a party was that of a reasonably prudent man. See 65A C.J.S. Negligence § 232 (1966).
The jury was instructed in this regard as follows:
The Court instructs the Jury that at the time the deceased, Robert Earl Jaquith, was engaged in physical education activities in the gymnasium of the Defendant's school, it was the duty of the Defendant to exercise reasonable care to furnish the said Robert Earl Jaquith with a reasonably safe place in which to perform such activities; that in determining whether or not the Defendant exercised reasonable care, you may take into consideration the customs, usages and practices of schools engaged in similar activities. The Court instructs you that if you believe from a preponderance of the evidence in the case that by using reasonable care, the Defendants should have installed a mat on the gymnasium wall behind the basketball goal, and you further believe from a preponderance of the evidence that the failure to do so was negligence on the part of the Defendant, and you further believe from a preponderance of the evidence that such negligence, if any, proximately caused or proximately contributed to the death of Robert Earl Jaquith, then the Court instructs you that it is your sworn duty to return a verdict for the Plaintiffs. (Emphasis ours.)
*223 This instruction does not state that negligence is a failure to comply with custom and usage. It states that custom and usage could be considered with other evidence as a factor in determining whether the appellant exercised reasonable care. This is no more than permitted by the law as we understand it. We conclude this assignment of error to be without merit.
Appellant's next argument for reversal relates to various statements and questions by appellees' counsel during the trial. The first was a question propounded to a prospective juror on voir dire examination concerning his employment. The individual in question responded that he was employed by an insurance company. Thereafter, in response to further questions by appellees' attorney, the prospective juror replied that his company sold fire and casualty insurance, and that although he personally did no business with the appellant, other agents of his company did. At this point appellant's counsel asked for a hearing out of the jury's presence during which he objected to this line of questioning and moved for a mistrial. Both the objection and the motion were overruled by the judge although the prospective juror was excused for cause.
Appellant contends that such questions were improper in that they informed the jury that the defendant had liability insurance. The appellant is correct in his assertion that evidence or statements before a jury that a defendant has liability insurance may be grounds for reversal whether such information was true or not. Odom v. Walker, 193 Miss. 862, 11 So.2d 452 (1943); Herrin v. Daly, 80 Miss. 340, 31 So. 790 (1902). However, this rule is not absolute. It is well established that an attorney has the right to determine whether prospective jurors work for insurance companies which do business with a defendant. An attorney is required to confine his questions in this regard to those which are necessary to qualify the jury under the facts of a particular case. Avery v. Collins, 171 Miss. 636, 157 So. 695, 158 So. 552 (1934). Questions should be posed in a manner which would elicit the desired information without bringing the subject of insurance before the jury, although in rare cases such cannot be avoided. See Shearron v. Shearron, 219 Miss. 27, 68 So.2d 71, 69 So.2d 71, 69 So.2d 801, 70 So.2d 922 (1953); Kennedy v. Little, 191 Miss. 73, 2 So.2d 163 (1941). See also M. & A. Motor Freight Lines, Inc. v. Villere, 190 Miss. 848, 1 So.2d 788 (1941). Since there is no indication that the questions asked by appellees' counsel were beyond the limits prescribed by our case law, we are of the opinion that the lower court acted properly in overruling the defendant's objection and refusing to grant a mistrial.
The appellant next contends that the appellees' attorney erroneously attempted to prove that protective wall mats had been installed after the accident in question, and this constitutes prejudicial error. It is our opinion the record does not sustain the appellant's contention. This colloquy was as follows:
"Q. Father, I believe that Mr. Howie, the physical education instructor, has already testified about whether or not there were mats on the wall of the gym. State whether or not you have had any part yourself in purchasing mats for the gym.
"BY MR. BUFKIN: May it please the Court, this is a lawsuit involving matters that occurred prior to September 13, 1967, we object to the form of the question.
"BY THE COURT: I sustain it on that ground.
"BY MR. BOWLING: (continuing)
"Q. Father, you can't say anything about what's happened except prior to September 13, 1967. I will ask you if there were any safety mats on the concrete block wall behind the basketball goals prior to that date?
"A. There were not."
On redirect examination, Coach Howie, who had previously testified that *224 the wall was safe for basketball purposes, was asked: "In your official capacity did you do anything out there after this happened to in any way change your opinion or in any way affirm your opinion?" An objection was interposed by appellant's counsel and promptly sustained, but the appellant argues that the court erred in overruling his motion for a mistrial at this point. It is, of course, improper to introduce evidence of subsequent changes or repairs to establish negligence. Chicago Mill & Lbr. Co. v. Carter, 209 Miss. 71, 45 So.2d 854 (1950); Standard Oil Co. v. Franks, 167 Miss. 282, 149 So. 798 (1933). In view of this authority we are of the opinion that the court properly sustained both of appellant's objections. However, we also feel that the court was correct in overruling the motion for a mistrial. This matter was one largely in the discretion of the trial judge and we cannot say that there was an abuse in this regard since neither witness gave any information concerning changes to the wall subsequent to the accident. The innuendo, if in fact there was any, resulting from these questions, was not sufficient grounds for mistrial.
The third remark complained of occurred during the closing argument to the jury when appellees' counsel stated that it was the custom for schools to use safety mats and that "his honor has told you that this is the guideline for your decision." An objection was interposed and overruled. The appellant contends that this remark was error because custom and practice are not conclusive of negligence as this statement would infer. This point was preserved by bill of exceptions, but the judge made the notation before signing such bill that he could not remember whether appellees' counsel had said "the guideline" or "a guideline." The language used could have great impact upon the jury. The court instructed the jury that it might properly consider custom and usage in determining whether the defendant exercised reasonable care. Therefore, if appellees' counsel said that "his honor has told you that this is a guideline," he was only repeating what the judge had stated in another manner. If the word "the guideline" was used, the attorney would have been making a statement contrary to the instructions as given by the judge and therefore, be in error. Since we have no method of determining which word was used, we will presume that there was no error.
The appellant next contends that the attorney for the appellees indulged in the "golden rule" argument. Since the court sustained the objection thereto by the appellant, we are of the opinion that no prejudicial error resulted therefrom and that the appellant's rights were adequately protected.
The last statement to which appellant objects is as follows: "Gentlemen, mats were necessary in order to give the fullest protection possible. Every young man and girl in this State is entitled to the fullest protection that we can give them." An objection to this statement was overruled. Appellant claims that such an argument is improper in that it attempts to verbally instruct the jury on the law contrary to the instructions granted by the court. This comment, if taken literally, would have the jury believe that the defendant was required by law to provide "the fullest protection possible" instead of the proper standard which requires only reasonable care. We do not feel that these remarks were prejudicial to the defendant. It does not appear that they were calculated to instruct the jury to the effect that it was legally bound by a particular standard, but were simply propounded as part of a general argument to show negligence. We recognize the rule that an attorney is afforded wide latitude in his arguments to the jury. Copiah Dairies, Inc. v. Addkison, 247 Miss. 327, 153 So.2d 689 (1963); Nelms & Blum Co. v. Fink, 159 Miss. 372, 131 So. 817 (1930). Since the trial judge was in a better position than this Court to determine the effect of this statement we *225 think it proper to abide by his decision since basically it is one of judicial discretion.
The fourth and fifth assignments of error are directed to the court's refusal to sustain appellant's motions for a directed verdict, peremptory instruction, judgment notwithstanding the verdict, and that the verdict was against the overwhelming weight of the evidence. In considering the question of whether it was error to refuse appellant's request for a directed verdict or peremptory instruction it is well established that all the material facts which appellees' evidence tends to establish must be taken as true, along with all the reasonable inferences which may be drawn therefrom. See Illinois Cent. R.R. v. Aldy, 185 So.2d 680 (Miss. 1966); Marlon Inv. Co. v. Conner, 246 Miss. 343, 149 So.2d 312 (1963). The same is true in regard to a motion for a judgment notwithstanding the verdict. Hawkins v. Hillman, 245 Miss. 385, 149 So.2d 17 (1963). Following such guidelines in reviewing the evidence in the present cause we are of the opinion that the court was correct in overruling appellant's motions for a directed verdict, peremptory instruction, and judgment n.o.v. If there was negligence, it was a result of the defendant's failure to provide protective mats, and certainly was a proper question for the jury. Therefore, we find no merit in the fourth and fifth assignments of error.
The sixth assignment of error asserts that the jury's verdict is so grossly excessive as to evidence passion and prejudice. This proposition is not persuasive. It is stated that there is no precise mathematical formula whereby damages may be ascertained in a wrongful death action. Boyd Construction Co. v. Bilbro, 210 So.2d 637 (Miss. 1968). See also Miller Transporters, Ltd. v. Espey, 187 So.2d 876 (Miss. 1966). There are many factors which the jury should take into consideration in reaching a verdict. We stated in Illinois Central Railroad Co. v. Ragan, 252 Miss. 335, 340-341, 173 So.2d 433, 435 (1965):
There is no case known to us from our court which puts either a floor or a ceiling upon the amount of a judgment rendered in a wrongful death case. There is no mathematical formula by which such damages can be ascertained. Each case must stand and depend upon its own facts. As stated in the case of Illinois Central Railroad Co. v. Nelson, 245 Miss. 395, 146 So.2d 69, 73, 148 So.2d 712 [4 A.L.R.3d 1217] (1962):
"The cases are helpful only as general guides, for in the matter of damages each case must be reviewed on the basis of the particular facts involved, including the age of the deceased in a wrongful death action, his life expectancy, his anticipated earnings, the intensity and duration of suffering, the relationship between the deceased and his survivors, and matters of dependency. When this Court reviews the amount of damages it is important that two considerations be kept in mind. The law has placed in the hands of the jury the matter of measuring damages in cases tried in circuit court, and this Court may not rightfully substitute its judgment for that of the jury; and this Court will not disturb the jury verdict unless it evidences passion, prejudice, or bias. * * * The second important consideration is that when the amount of the verdict, when fairly and impartially reviewed, evidences passion, prejudice, or bias, or when the award of the chancellor is manifestly wrong, it is the duty of this Court to reverse or order a remittitur. The duty and power of the court in this respect has been recognized and exercised throughout its history."
In applying this rule to the present facts we cannot say that the award of $50,000 was so great as to evince bias or prejudice. The deceased was seventeen years of age at the time of his death. Prior thereto he had been in good physical *226 condition with above normal intelligence. The evidence is uncontradicted that he suffered intense pain subsequent to his injury. There are five members of this close-knit family who survive young Jaquith. Considering these factors we conclude this assignment of error is without merit.
We have considered the remainder of the assignments of error and it is our opinion that they are not persuasive and require no comment.
We have carefully reviewed the record and the arguments of counsel and it is our opinion that the cause was properly submitted to a jury and that its verdict was in accord with the evidence. Finding no prejudicial error, we are of the opinion that the cause should be affirmed.
Affirmed.
All Justices concur except RODGERS and SMITH, JJ., who dissent.
RODGERS, Justice (dissenting):
I respectfully disagree with the results reached by my colleagues in the majority opinion in this case, and in view of the apparent danger that will emanate from this decision, I am impelled to point out the fallacy of our determination.
The overriding issue submitted to the trial court in this case was the question as to whether or not the school was negligent in not providing wall padding behind the goal adjacent to the basketball court so as to prevent injury to the students playing basketball. This issue brought into focus the question of whether or not the wall was so near to the basketball court as to constitute a hazard and to require padding. The burden of proof was upon the plaintiff to establish by competent evidence that the school was negligent in failing to provide the wall padding. In order to establish the affirmative of this issue, and to show that the school authorities should have foreseen the inevitable consequence of the failure to furnish wall padding, the plaintiff offered proof to show that practically all schools within the adjacent area provided padding on the walls. Evidence was offered to show that the school authorities were aware of the danger involved. Moreover, experts testified that it was not only customary to provide padding on the wall behind the basketball goal, but that ninety-five percent of the schools within the area did provide wall padding for indoor basketball courts. One of the experts was asked about two books. The first of these books was in the nature of a pamphlet entitled "Youth Fitness for Mississippi." This book was not only signed by the State Superintendent of Education but was also signed by the Executive Officer of the State Board of Health, and is shown to be a "guide" presenting "suggestions and principles that have come from outstanding leaders of our [the teaching] profession." This book stated among other things that "facilities and equipment should be every school's responsibility" and that "gym walls should be equipped with wall mat protection."
It was said that this book was compiled from a study of the needs of this area and from another book which was also introduced into evidence. The second book was entitled "Planning Areas and Facilities for Health, Physical Education and Recreation." It is authored by the Athletic Institute and the American Association for Health, Physical Education, and Recreation. These two associations are located in Chicago and Washington, D.C., respectively, and this book purports to be a guide of "Planning Principles, Planning Units and Area Types." In this book, under the heading "Basketball" it is stated: "A 10-foot zone of unobstructed space outside the side and end lines is recommended. (See the court diagram in the Appendix.)" This diagram shows a distance of 7 feet from the boundary line to the wall. The book also shows: "If mats are to be hung in the gymnasium, appropriate hangers should be provided. For safety reasons, padding should be installed on all walls in back of basket." Again it is said, "Areas for vigorous activity, where combative or *227 competitive sports are engaged in need floor and/or wall covering to protect the participants. No specifications or classifications are given here, but every consideration is urged and every precaution should be taken." Objection was made to the introduction of these books because they were not competent under the hearsay rule and because the last recommendation shown above imposed a greater degree of care upon the school authorities than the care of a reasonable and prudent man required by law.
The rule of evidence here involved is succinctly stated in Jones, The Law of Evidence § 578 (2d Pocket ed. 1912), at 730:
"According to the clear weight of authority scientific books and treatises can not be received as evidence of the matters or opinions which they contain. Among other objections which have led the courts to reject books of this character as evidence is the fact that opinions on many of the questions of philosophy and science are so constantly undergoing change that it would be impossible to know whether the author still entertains the same views. Another objection is that testimony of this character would be hearsay."
This rule is more stringent with reference to publications by private persons and private organizations. It is said in 31 Am.Jur.2d Expert and Opinion Evidence § 66 (1967) that:
"Learned treatises and scientific publications (except works of `exact' science such as mathematical tables) are generally held to be inadmissible, under the hearsay rule, as proof of the truth of statements therein. Upon like principle, the opinion which an expert witness gives must be his own and not that of the author of a treatise, and the practice of reading from medical treatises, in connection with the opinion given by an expert witness, is similarly generally condemned.
"Since books of science are not generally admissible in evidence to establish the doctrines therein affirmed, it may not be proper for counsel on direct examination to read to an expert witness an extract from a scientific work and then interrogate him concerning the extract, especially where the extract is a mere reiteration of an opinion given. Nor is it proper to permit an expert witness to read from a scientific book an extract with which his views coincide. The witness may not state what the standard authorities say upon a question, for if the book itself is improper, it is much more improper to recite from memory extracts therefrom. An expert witness may not read his own published books to support his opinion. But it is proper for the witness to testify that so far as he knows, all the authorities support his opinion, and he may be permitted to name the authorities whose views coincide with his opinion.
"The rule restricting the use of scientific and medical books as evidence does not restrict the scope of opinion testimony of expert witnesses although their opinions may, in some degree, be founded on scientific books or may have been reached through a study of standard publications on the subject in hand. Experts, in giving opinion testimony, may refer to scientific authorities and state the result thereof. Such reference is not deemed an introduction of the books in evidence, but rather, to be a means of enabling the witness to refresh his memory or to corroborate his own opinions. Thus, it is held that the expert may certify his testimony by reference to books or documents covering matters of law, medicine, or other branch of science."
In 30 Am.Jur.2d Evidence § 1003 (1967) it is said:
"The rule supported by most courts is that evidence of codes or standards of safety issued by governmental bodies as advisory material, but not having the force of law, is not admissible on the issue *228 of negligence, although a few courts have held otherwise. Two reasons which have been given for the exclusion from evidence of safety codes issue by governmental department not having the force of law, are (1) that although safety codes may be the expert opinions of the authors, such opinions are not given under oath, with an opportunity for cross-examination, and (2) that they do not deal with an exact science, but with a controversial and developing science in which opinions may change, and that even the opinions of the authors themselves may have changed since the code was written.
"A safety code which has been given compulsory force by the legislative body is admissible in evidence, although this is not true where it is either improperly promulgated, otherwise invalid, or not applicable to the particular legal circumstances or relationship involved."
This rule is overwhelmingly supported by Annotations collected in 122 A.L.R. 644 (1939) and 75 A.L.R.2d 778 (1961), and by 32 C.J.S. Evidence §§ 717-18 (1964).
The rule first came to the attention of this Court in Tucker v. Donald, 60 Miss. 460 (1882). In that case a question was raised as to the effect of paralysis on the human arm. The contestants in a will case offered a physician to testify as an expert, and while he was on the witness stand the will contestants offered in evidence Copeland's Medical Dictionary and proposed to prove its high character in the medical profession. The contestants attempted to read some of the book to the jury. On appeal this Court affirmed the ruling of the trial judge refusing to allow the introduction of this book into evidence. This Court said on appeal:
"We cannot regard this, under the statement of the bill of exceptions, as a proposition that the expert should read the book as corroborative or explanatory of his own testimony, nor as a request that counsel should be permitted to make it a part of their argument. As to the admissibility of a book of science for either of these purposes the authorities are divided, it not unfrequently being held to be a matter resting in the sound discretion of the court. The proposition here, as we understand it, was to introduce the extracts as primary evidence before the jury, and viewed in this light, it was clearly inadmissible, as held by the great weight of authority. Extracts from such a book could be no more than a written statement of the opinion of the author, expressed perhaps many years before, liable to subsequent change or modification, not delivered under oath or in the presence of the court, with no opportunity for cross-examination by the other side, nor of explanation and application to the particular facts of the case in hand by the author. However, high, therefore, may be the general character of the work, it lacks every safeguard which distinguishes hearsay from legal evidence, and stands, therefore, upon a far inferior and wholly different footing from the testimony of the humblest expert." 60 Miss. at 469-470.
This rule was again called to our attention in Pevey v. Alexander Pool Company, 244 Miss. 25, 139 So.2d 847 (1962). In that case the defendant offered in evidence a manufacturer's advertisement pamphlet which indicated that the advertised machine worked automatically to shut off chlorine gas injection. We again pointed out that this sort of evidence is hearsay evidence, is not subject to cross-examination, and should not have been admitted in the trial before the jury.
The rule was again the subject of our study in Milner Enterprises, Inc. v. Jacobs, 207 So.2d 85 (Miss. 1968), and we again held that the trial court was correct in its ruling that a member of the Mississippi State Rating Bureau could not testify from a pamphlet or booklet published by the National Fire Protection Association with *229 reference to the requirement of a sprinkler system in an airplane hanger.
The fact that this Court has not condemned the use of a "National Electrical Safety Code" issued by the Federal Bureau of Standards with reference to a guide for a safe method of constructing dangerous electric lines is not applicable here, because the Legislature of Mississippi has preempted this field on this issue by section 2778, Mississippi Code 1942 Annotated (Supp. 1968), requiring the erection and maintenance of dangerous electric lines to "meet the requirements of the National Electrical Safety Code." We have therefore permitted the use of this Code in evidence. See Crouch v. Mississippi Power & Light Co., 193 So.2d 144 (Miss. 1966); Mississippi Power & Light Co. v. Walters, 248 Miss. 206, 158 So.2d 2, 160 So.2d 908 (1963); Galloway v. Singing River Elec. Power Ass'n Inc., 247 Miss. 308, 152 So.2d 710 (1963). It is interesting to note, however, that the federal court held that the Electrical Code was not admissible in evidence. See Mississippi Power & Light Co. v. Whitescarver, 68 F.2d 928 (5th Cir.1934).
There can be no question that the introduction of the books above mentioned was an error. The question then resolves itself into whether or not the erroneous violation of this salutary evidentiary rule was a reversible error. I think it was a fatal error to permit the jury to have this hearsay evidence, not only because this evidence could not be cross-examined, but because I am convinced that it created prejudice and a false impression on the jury as to the degree of care required of this school.
It has been said (Bouvier's Law Dictionary 702 (1839)) that:
"`The rules of evidence * * * are the maxims which the sagacity and experience of ages have established, as the best means of discriminating truth from error, and of contracting as far as possible the dangerous power of judicial discretion.'"
The law of evidence is a growth of judicial experience from which general rules have been established: (1) for declaring what is to be taken as truth without proof; (2) for declaring the presumptions of law, both disputable and conclusive; (3) for the production of legal and the exclusion of incompetent evidence; and (4) in some cases the effect of the proof offered.
Since the rule of evidence is a principle expressing the mode or manner of proving facts and circumstances upon which a party may properly rely to establish facts in dispute, it follows that the introduction of evidence which exceeds the right of a party and which is calculated to cause the trier of fact to believe the responsibility of the defendant to be greater than is required by law is harmful error. Such evidence prevents the defendant from obtaining a fair trial, because a recovery in such action is based upon a false predicate or false report of the law. One of the books introduced says that "every precaution should be taken." This requirement set out in the book is far in excess of the law requiring the school to "use such reasonable care as a reasonable and prudent person would use under similar or like circumstances."
Moreover, the statement that "for safety reasons padding should be installed on all walls in back of the basket" is an absolute. It leaves no room to determine the foreseeable danger by reason of the distance from the basketball court to the wall. These books, in my humble judgment, were not only unfair and inadmissible in evidence, but they left a false impression in the minds of the jurors on a matter which is the very heart of the lawsuit.
I think the introduction of this evidence was a harmful error for which this case should be reversed for a new trial without this evidence.
SMITH, J., joins in this dissent.